LODGE NO. 12, DISTRICT NO. 37, INTERNATIONAL ASSOCIATION OF MACHINISTS, Appellant,

v.

CAMERON IRON WORKS, INC., Appellee.

No. 18716.

United States Court of Appeals
Fifth Circuit.

June 27, 1961.

Rehearing Denied July 28, 1961.

---

Chris Dixie, Houston, Tex., Plato E. Papps, Washington, D. C., Dixie & Schulman, Houston, Tex., for appellant.

Leroy Jeffers, Houston, Tex., Joseph W. Moore, Fouts, Moore, Williams & Caldwell, Houston, Tex., Vinson, Elkins, Weems & Searls, Houston, Tex., of counsel, for appellee.

Before TUTTLE, Chief Judge, and HUTCHESON and BROWN, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

We deal here with the question of whether arbitration of a labor dispute pursuant to a collective bargaining agreement may comprehend an award of a money sum equivalent to back pay for time lost due to an unauthorized discharge. The District Court answered it in the negative. We disagree and reverse.

The case is here for the second time. On its former appearance, in there reversing the District Court, we held that

a grievance within the terms of the arbitration clause was presented concerning the discharge of 15 employees for misconduct during the preceding strike. Lodge No. 12, etc. v. Cameron Iron Works, Inc., 5 Cir., 1958, 257 F.2d 467, certiorari denied, 358 U.S. 880, 79 S.Ct. 120, 3 L.Ed.2d 110. On remand the Court, without a jury, heard the case. The Employer's effort to establish that in the settlement of the strike the parties had expressly agreed not to arbitrate this controversy having failed,[1] there was nothing left for the Court to do save order arbitration. This it did. But in so doing, the Court expressly directed that the " * * * scope of arbitration, however, may extend only to the issue of reinstatement of the employees and may not include the award of back pay for time lost." [183 F.Supp. 148.] The Court presumably had two things in mind. First, since the " * * * grievance sought to be arbitrated is the reinstatement of the employees * * * " such controversy " * * * may be settled by the board upon terms and conditions not necessarily involving the award of back pay." Second, and more import-

ant, it held that there " * * * is no clear authority in the contract for the award of back pay as a remedy in arbitration," and "such a remedy cannot be implied from a grant of authority to arbitrate * * * " any difference as prescribed in the collective bargaining agreement. The Judge cited and without a doubt relied heavily on our recent decision in Refinery Employees Union v. Continental Oil Co., 5 Cir., 1959, 268 F.2d 447, certiorari denied, Nov. 16, 1959, 361 U.S. 896, 80 S.Ct. 199, 4 L.Ed.2d 152.

The collective bargaining agreement reflected the mutual purpose of settling "problems or grievances." [2] In contract terms which have been characterized as the standard clause, United Steel Workers v. American Manufacturing Co., 1960, 363 U.S. 564, at page 565, 80 S.Ct. 1343, 4 L.Ed.2d 1403, the parties bound themselves to arbitrate " * * * any difference * * * between the Company and any employee as to the meaning, application or interpretation of the provisions of" the agreement.[3] Arbitration machinery comprehended the selection of arbitrators and their function,[4] the selec-

1. The Employer strenuously urged the factual defense that as a part of the settlement of the strike it was mutually agreed that reinstatement of strikers would not be subject to arbitration. The Judge held against it on this. The Employer acquiesced in this without taking any cross appeal presumably on the grounds that United Steel Workers of America v. Warrier & Gulf Navigation Co., 1960, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409, extinguished whatever hope it might have had for reversal of this issue.

2. The contract provided:
"Article IV—Grievance Procedure
"Section 1. It is the mutual intent and desire of the Union and the Company that employees make an effort to settle their problems or grievances with their Superior prior to resorting to the Grievance Procedure."

3. Article IV, see note 2, supra, continued:
"Section 2. Should any difference arise between the Company and any employee as to the meaning, application or interpretation of the provisions of this Agree-

ment, such difference may constitute a grievance and shall be settled as follows:
"[(a) though (f) described successive steps] * * *
"(e) If the grievance is not satisfactorily adjusted by the General Manager or his designated representative, then arbitration may be invoked as provided in Article V."

4. Article V prescribed a Board of Arbitration composed of one member selected by the Union and one by the Company. The Union and the Company had to name their representatives within three days. Section 1 then provided:
"Before proceeding toward selection of the third member of the Board of Arbitration, the two representatives appointed by the parties shall attempt to effect a settlement of the controversy within five (5) days * * *. If it should appear that additional time would be helpful toward effecting settlement, this five (5) day period may be extended by mutual consent of the two representatives. In the event settlement of the controversy is not effected during such period * * * the two representatives shall * * * select the disinterested

tion of the disinterested member, and the powers of the Board of Arbitration so constituted.[5]

After the District Court announced its decision, the Supreme Court handed down the three Steel Workers opinions on June 20, 1960.[6] The Union by timely motion for revision of findings, F.R. Civ.P. 59(e), 28 U.S.C.A., brought these to the attention of the Trial Court. Presumably the Court considered them of no substantial significance. We think their importance has been too much minimized and without attempting to cast it in terms of the impact of these cases upon our Continental Oil case, 268 F.2d 447, we think these intervening decisions point in a compelling way to a reversal.

The Employer insists in its brief that the 63 printed page contract with its minute details of rates of pay, hours of work, and conditions of employment is a "mundane and specific contract that seeks to spell out the details of the agreement." Consequently, it urges it "is no broad and 'generalized code of industrial self-government'" nor an "ambiguous and amorphous charter to bring into being an undefined 'common law of the shop.'" But this is really no answer.

■ Of course the terms of the contract, and frequently their very precision will be relevant if not controlling. But the Supreme Court did not find the unique importance of such contracts either in their brevity or ambiguity. The Court's approach is the one first articulated in Textile Workers Union v. Lincoln Mills, 1957, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972, that § 301(a), 29 U.S.C.A. § 185(a) empowers federal courts to compel arbitration and that "* * * the policy to be applied in enforcing this type of arbitration was that reflected in our national labor laws." 363 U.S. 574, at pages 577–578, 80 S.Ct. 1347, at page 1350.[7] The congressional policy on the setttlement of grievances is reflected in § 203(d), 29 U.S.C.A. § 173 (d). And "That policy can be effectuated only if the means chosen by the parties for settlement of their differences under a collective bargaining agreement is given full play." 363 U.S. 564, at page 566, 80 S.Ct. 1343, at page 1346. Consequently the run of arbitration cases, e. g., Wilko v. Swan, 1953, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168, is not relevant. "In the commercial case, arbitration is the substitute for litigation. Here arbitration is the substitute for industrial strife"; and "* * * arbitration of labor disputes under collective bargaining agreements is part and parcel of the collective bargaining process itself." 363 U.S. 574, at page 578, 80 S.Ct. 1347, at page 1351. That approach led to the express rejection of the thesis typified by a New York case [8] that "If the meaning of the provision of the contract sought to be arbitrated is beyond dispute, there cannot be anything to arbitrate and the contract cannot be said to provide for arbitration." 363 U.S. 564, at page 567, 80 S.Ct. 1343, at page 1346. The

member * * *." Then follows the method of selecting the third member where the two others cannot agree.

5. Article V, note 4, supra, then continues: "Section 2. The Board of Arbitration shall render a decision within fifteen (15) days from the date the hearing is completed. The terms and conditions of settlement shall be within the sole discretion of the Board and the decision of a majority of the Board shall be final and binding on the parties; provided, however, the Board shall have no authority to violate, contravene, disregard or supplement the terms of this agreement."

6. United Steelworkers v. American Manufacturing Co., 1960, 363 U.S. 564, 80 S. Ct. 1343, 4 L.Ed.2d 1403; United Steelworkers of America v. Warrior & Gulf Navigation Co., 1960, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409; United Steelworkers of America v. Enterprise Wheel & Car Corp., 1960, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424.

7. References to the three opinions, note 6, supra, are hereafter made by volume and page citations, without the case styles.

8. International Association of Machinists v. Cutler-Hammer, Inc., 271 App.Div. 917, 67 N.Y.S.2d 317, affirmed 297 N.Y. 519, 74 N.E.2d 464.

Supreme Court categorically rejected this as "a principle that could only have a crippling effect on grievance arbitration." 363 U.S. 564, at pages 566–567, 80 S.Ct. 1343, at page 1346.

■ Of course such factors so broadly declared do not solve the problem automatically. The Courts still have a role. "The Congress, however, has by § 301 * * * assigned the courts the duty of determining whether the reluctant party has breached his promise to arbitrate. For arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." 363 U.S. 574, at page 582, 80 S.Ct. 1347, at page 1353. But in resolving this threshold legal question of the contract promise, courts are to be guided by the same overriding consideration. For the Court continues, " * * * the judicial inquiry under § 301 must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance or did agree to give the arbitrator power to make the award he made. An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." 363 U.S. 574, at pages 582–583, 80 S.Ct. 1347, at page 1353.

■ Viewed in this light several things are clear in the context of this record. At the outset is the nature of the grievance, that is the controversy over which there was a dispute. It covered two things. The first was the claim that each of the 15 men was wrongfully denied reinstatement and hence wrongfully discharged. The second aspect was the demand that each be reinstated "with all rights unimpaired and with pay for all time lost." This latter facet was an integral part of the controversy over the substantive rights accorded by the collective bargaining agreement. It was not a mere dispute over the nature or operation of the arbitration machinery or the power of the arbitrator. It was, therefore, a "difference * * * as to the meaning, application or interpretation of the provisions" of the contract, see note 3, supra.

■■ The District Court apparently undertook to hold that the collective bargaining contract did not extend this sort of relief to one adjudicated by an arbiter to have been wrongfully discharged. But in searching the contract for "particular language * * * which will support the claim," 363 U.S. 564, at page 568, 80 S.Ct. 1343, at page 1346, or overcome the claim the Trial Court undertook to perform the function of the arbiter. Whether the contract does or does not give rise to an obligation on the part of the employer to make good to a wrongfully discharged employee back pay for the time lost is a question of contract interpretation. But that does not make it one for a court to decide. "The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator." 363 U.S. 564, at pages 567–568, 80 S.Ct. 1343, at page 1346.

This is all the more true when examined against the very broad language describing the powers of the Board of Arbitration. In sweeping language which scarcely could be made more comprehensive, the contract provides that "The terms and conditions of settlement shall be within the sole discretion of the Board and the decision of a majority of the Board shall be final and binding on the parties; * * *," see note 5, supra. The reference to the "settlement" is neither inadvertent nor insignificant. In the preceding Section 1 of Article V, see note 4, supra, the contract charges the two arbiters with the duty of endeavoring to "effect a settlement of the controversy" before naming the disinterested member. What the parties sought by

the grievance procedure was something more than adjudication as that term is normally employed. Such contract language is almost a prophetic forecast of the words to come later from the Supreme Court that " * * * the grievance machinery under a collective bargaining agreement is at the very heart of the system of industrial self-government. Arbitration is the means of solving the unforeseeable by molding a system of private law * * *." 363 U.S. 574, at page 581, 80 S.Ct. 1347, at page 1352.

▇▇▇ Of course this does not turn the arbiter loose. For " * * * an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. * * * When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award." 363 U.S. 593, at page 597, 80 S.Ct. 1358, at page 1361. That means that in arriving at its judgment, that is the "settlement" of the dispute, the Board is under the restraint of the contract which deprives it of any "authority to violate, contravene, disregard or supplement the terms of" the agreement, see note 5, supra. To the extent that the meaning and interpretation of this clause is for a court in determining the scope of the promise to arbitrate, we think it means nothing more than this. The Arbitration Board in reaching what is called a "settlement" rather than, say, an adjudication, is not to act as a mediator in working out a new agreement on something not previously covered at all. That is what would result if a "settlement" were forced on the parties which would, as the clause states, "violate" or "contravene" the agreement. So far as the term "supplement" is concerned it can not be read literally to rule out the right of arbitrators—just as would a court—to find substantive rights, obligations and duties which are implied though not expressed. The alternative to this would make the agreement to arbitrate superfluous for

the sole inquiry would then be: is it expressed in the contract? If not, then to read it into the contract is to "supplement" it, and this is forbidden.

Once this interpretation of the exclusionary clause is made by the Court, what substantive matter is thereafter considered to be within or without the express or implied terms of the agreement is a decision for the arbitrators. For this would present a "difference * * * as to the meaning, application or interpretation of the provisions * * *" of the agreement, note 3, supra.

▇▇ ▇▇ From the triology opinions several things seem clear. The merits of the controversy may not be looked to by a court for the purpose of declaring that a correct legal interpretation of the contract would not support the construction sought. This may not be done directly, nor may it be done under the guise of determining that the matter is outside the agreement to arbitrate. "The acceptance of [any such] view would require courts, even under the standard arbitration clause, to review the merits of every construction of the contract. This plenary review by a court of the merits would make meaningless the provisions that the arbitrator's decision is final, for in reality it would almost never be final." 363 U.S. 593, at pages 598–599, 80 S.Ct. 1358, at page 1361. It follows that when " * * * the judiciary undertakes to determine the merits of a grievance under the guise of interpreting the grievance procedure of collective bargaining agreements, it usurps a function which under the regime is entrusted to the arbitration tribunal." 363 U.S. 564, at page 569, 80 S.Ct. 1343, at page 1347. Similarly, as to the scope of the arbitration promise itself, the intention to exclude must be clearly expressed. "In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail * * *. Since any attempt by a court to infer such a purpose necessarily comprehends the merits, the court should view with sus-

picion an attempt to persuade it to become entangled in the construction of the substantive provisions of a labor agreement, even through the back door of interpreting the arbitration clause, when the alternative is to utilize the services of an arbitrator." 363 U.S. 574, at pages 584–585, 80 S.Ct. 1347, at page 1354.

Likewise, whether it is thought to be a part of the substantive right or more a part of the grievance procedure, in the absence of clearly restrictive language, great latitude must be allowed in fashioning the appropriate remedy constituting the arbitrator's "decision." "When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies. There the need is for flexibility in meeting a wide variety of situations. * * *." 363 U.S. 593, at page 597, 80 S.Ct. 1358, at page 1361. And particularly should latitude in fashioning the remedy be allowed when the grievance itself comprehends demands both for reinstatement and back pay so that on its face the controversy is a "difference * * * as to the meaning, application or interpretation" of the agreement.

Applying these principles to this contract which in a sweeping grant of authority specifies that the " * * * terms and conditions of settlement shall be within the sole discretion of the Board * * *," we find no such positive declaration as would exclude from the arbitrators the power to determine whether the

award of back pay is or is not within the terms of the agreement, and if so, whether it is or is not an appropriate remedy.[9]

The whole grievance complaining of wrongful refusal to reinstate and to reimburse the dischargees for back pay is for the Board of Arbitration. The Trial Court's order compelling arbitration should be without the restrictions imposed. In order that arbitration of this 1957 controversy may now go forward, the order is modified by deleting the restriction [10] and as modified, affirmed. 28 U.S.C.A. § 2106.

Modified and as modified affirmed.

HUTCHESON, Circuit Judge, concurs in the result.

9. It is fundamentally erroneous to approach this as merely a grievance over reinstatement. The controversy involves both reinstatement and back pay under the contract. Each is a substantive matter under the contract. It is not merely a question of what remedy, as such, is permitted for a single substantive claim. "The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking

arbitration is making a claim which on its face is governed by the contract." 363 U.S. 564, at pages 567–568, 80 S.Ct. 1343, at page 1346.

10. " * * * Provided, however, that arbitration in each such grievance shall extend only to the issue of reinstatement and the arbitration decision and award in the case of each grievance shall not include an award of back pay for time lost but shall be limited to the issue of reinstatement."