## TEXAS GAS TRANSMISSION CORPORATION

v.

## INTERNATIONAL CHEMICAL WORKERS LOCAL UNION NO. 187, AFL–CIO.

Civ. A. No. 7798.

United States District Court
W. D. Louisiana,
Monroe Division.

July 11, 1961.

On Rehearing Jan. 10, 1962.

522

William R. Tete, Jones, Kimball, Harper, Tete & Wetherill, Lake Charles, La., Moller & Talent, St. Louis, Mo., for plaintiff.

Charles E. Tooke, Jr., Shreveport, La., R. C. Sheppard, Akron, Ohio, for defendant.

BEN C. DAWKINS, Jr., Chief Judge.

This suit for a declaratory judgment is brought under the authority of 28 U. S.C. § 2201 and Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 185, seeking to have vacated a certain portion of an arbitrator's award rendered pursuant to a collective bargaining agreement then existing between the parties.

The background of the dispute, as found in the arbitral decision, is that on April 27, 1959, the complainant, Texas Gas, issued a posted notice to all employees that Memorial Day would be observed on Friday, May 29, 1959, rather than its usual calendared date of May 30, 1959, which was a Saturday. The defendant local union notified the company ten days later that it did not regard Friday, May 29, 1959, as an observed holiday under the contract, that it intended to observe May 30, 1959, as Memorial Day, and that its members expected to receive pay for that day in accordance with the agreement. The company posted an identical notice on June 16, 1959, to the effect that Friday, July 3, 1959, would be observed as a holiday rather than Saturday, July 4, 1959. Pursuant to these notices, the two holidays were observed on Friday, May 29, and Friday, July 3, respectively.

The union filed a written grievance with the company on June 19th, in which the nature of the grievance was stated to be:

"Failure on the part of the Company to observe a legally constituted

and Contractial [*sic*] Holiday and the substituting of another holiday therefor without contractial [*sic*] authority or agreement with the Union, thereby depriving a number of employees of their just contractial [*sic*] compensation."

The union asked for:

"Full compensation for all employees involved, to the amount they would have received had Memorial Day, as such, Saturday, May 30, 1959, been observed, without any changing of schedules for observance of the Company substituted day of Friday, May 29, 1959."

The union filed a similar grievance on July 29, 1959, protesting observance of the July 4th holiday on the preceding day.

When the parties could not agree, Paul M. Hebert was called upon to act as Arbitrator to settle the dispute. After a hearing, Arbitrator Hebert held that the company could not, under the agreement, substitute another day as a holiday when said holiday fell on a Saturday; that holiday pay was due even though a holiday fell on a Saturday when work was not scheduled for that day; that those employees who did not work on the Saturdays in question were entitled to eight hours of pay, and, in addition, those who worked were entitled to pay at time and one-half; and that the company was not entitled to a deduction of the holiday pay already paid to those employees who observed the holidays on Friday.

Complainant has acceded to that portion of the award which decided that the company could not observe a Saturday holiday on the preceding Friday, and that the company's employees must be paid for the Saturdays which the Arbitrator held to be the only days on which the holidays in question could be observed. It alleges, however, that the Arbitrator exceeded his authority by ruling that the company must forfeit the unearned wages paid to those employees for the Fridays immediately preceding such holidays. The complaint further alleges that this portion of the award is in the nature of a penalty which is outside of the Arbitrator's authority to interpret and apply the terms of the agreement. The complaint concludes with a prayer that this portion of the award be declared vacated, null and void and unenforceable.

The union filed an answer denying all of the material allegations and asserting that the facts alleged are insufficient to state a claim or cause of action upon which relief can be granted. In addition, the union sets forth a counterclaim based on the allegation that the company has refused to pay the employees their compensation as determined by the Arbitrator. Accordingly, the union prays for judgment dismissing the complaint of plaintiff, affirming the award of the Arbitrator and directing plaintiff to comply therewith.

The parties have agreed to dispense with trial on the merits, the case to be decided on a motion by plaintiff for summary judgment and defendant's motion to dismiss for failure to state a claim upon which relief can be given.

The following provisions of the collective bargaining agreement are here pertinent:

*Article III.* "The Union recognizes that all management functions not specifically limited by this Agreement are vested exclusively in the Company.

"Such functions include, but are not limited to, the direction of the working force; the utilization of employees on any work assignment, whether connected with their customary job or not; the right to hire, discipline, transfer, promote, demote, lay off, and discharge employees; to determine the number or complement of employees required at any work location or on any job; set work schedules or change schedules already set; control overtime and the necessity of an employee working overtime; and do

all other management functions that are considered necessary to the efficient management and operation of the business."

*Article VII. " * * * .*

"Any grievance other than one involving rates of pay (Appendix A) which remains unsettled after Step 3 may be submitted by either party to arbitration. Provisions for arbitration are as follows:

"If the Company and Union can agree on a single arbitrator, the party submitting the grievance to arbitration shall present it to such arbitrator promptly for final determination.

"If the Company and Union cannot agree on a single arbitrator, each party shall select one (1) member of a panel. The two (2) members so selected shall attempt to settle the grievance as promptly as possible.

"If they fail to settle the grievance within thirty (30) days, they shall promptly select a third member, who shall become chairman of the panel.

"Should they fail to agree on a third member, they shall immediately petition a Judge of the Federal Court in whose jurisdiction the grievance originated or the Federal Mediation and Conciliation Service to select a third member.

"As promptly as possible, the three-member panel shall meet and render a decision.

"Any final decision by the arbitrator or arbitrators shall be final and binding upon the parties, provided such decision is confined to an interpretation or application of the terms and conditions of this Agreement.

"Each party shall bear its proportionate expense of the arbitration cost."

*Article XIII. "Section 2—Regular Work Schedule*

"The Company will maintain a regular work schedule of eight (8) hours per day and forty (40) hours per week for each employee."

*Article XIV. "Holidays*

*"Section 1—Observed Holidays*

"The Company will recognize the following as observed holidays for permanent employees only:

"New Year's Day
Memorial Day
Independence Day
Labor Day
Thanksgiving Day
Christmas Day

"If the holiday falls on Sunday, it may be observed on the following Monday.

*"Section 2—Holidays Not Worked*

"If not worked, permanent employees will receive pay for eight (8) hours at their current straight time rate.

"To qualify, the employee must be actively at work all or a portion of the week in which the holiday occurs, unless absence is caused by personal illness, injury, or vacation.

*"Section 3—Holidays Worked*

"If worked, permanent employees will be paid one and one-half ($1\frac{1}{2}$) times their current rate for the hours worked, and in addition, will receive the amount set out in Section 2 of this Article."

Plaintiff primarily contends that the portion of the Arbitrator's award which directed "that the employees be paid for the two holidays in question and without deduction for the pay already given for the two days given off in the weeks in question" is beyond the scope of the Arbitrator's authority and therefore should be declared null and void. The thread of its argument is this: since the Arbitrator decided that the Saturdays in question were the proper days on which the holidays were to be observed, his awarding of holiday pay on the pre-

ceding Fridays is punitive in that the penalty is the payment of wages that are not provided for by the contract. In the alternative, plaintiff asserts that this payment was an award of damages based on equitable principles rather than the contractual obligation. Inasmuch as the Arbitrator is limited to interpreting and applying the terms of the agreement, his award of a penalty or damages was beyond the scope of his authority under Article VII of the agreement.

Plaintiff points out that the Arbitrator himself admitted that the portion of the award in question was based on equity rather than any contractual provision. The following quotation from the arbitral decision is cited:

" * * * Thus there is much equity in the position of the Company when it asserts that it acted in good faith and that the allowance of the grievance will force the Company to pay 48 hours of straight time for only 32 hours of work in each of the weeks in question. This situation has given the Arbitrator considerable pause. Nevertheless it must be borne in mind that this was a situation of the Company's own making and it appears equally unfair to the employees to have them penalized as a result of the action of the Company in electing to observe the wrong day as a holiday. * * * "

The Arbitrator was limited to determining the rights of the parties under the collective bargaining agreement, plaintiff argues, and had no authority to award damages for any breach of the agreement. Plaintiff admits that monetary awards are appropriate in some instances wherein the Arbitrator is interpreting the agreement. However, the Arbitrator could not require the company to forfeit a full day's pay for each of the days which the Arbitrator himself had decided could not be treated as holidays under the agreement. His award does not draw its essence from the contract, but is based entirely on equity.

Plaintiff asserts that the purpose of the arbitration clause is to resolve questions of interpretation and application of the agreement and is not a substitute for litigation to fix damages or penalties for its breach. This is evidenced by the last paragraph of Article VII which states that each party shall bear its proportionate expense of the arbitration cost. If the parties had intended to substitute arbitration for litigation, the costs would be taxed to the loser.

The defendant union argues that the Arbitrator had complete authority to decide the questions presented by the original grievances since such grievances arose over the application or interpretation of the provisions of the bargaining agreement. The Arbitrator also had full power to prescribe remedies for the breach of the contract, in view of the original grievances presented to him for decision.

Defendant further asserts that the Arbitrator's decision is not reversible by the courts on the grounds of mistake of law or fact; that an award given in accordance with the agreement should be and is a final and binding termination of the controversy.

The Arbitrator did not award punitive damages against the plaintiff, the union contends, rather he concluded that the company was not entitled to shut down its operations in an effort to circumvent the contract. Having violated the contract, the company was obligated to pay their employees for those days not worked but which should have been worked.

After due consideration, we are of opinion that plaintiff's position is correct, and that the Arbitrator's award of back pay must be set aside, as beyond his power under the collective agreement. This is so because, in the absence of an express agreement that the Arbitrator shall have the power to award a penalty or consequential damages no such damages or penalties may be as-

sessed by the Arbitrator. Refinery Employees Union of Lake Charles Area v. Continental Oil Co., D.C.W.D.La.1958, 160 F.Supp. 723, affirmed 5 Cir., 1959, 268 F.2d 447, certiorari denied 361 U. S. 896, 80 S.Ct. 199, 4 L.Ed.2d 152. See also to the same effect Lodge No. 12, Dist. No. 37, Intern. Ass'n of Machinists v. Cameron Iron Works, Inc., D.C., 183 F.Supp. 144, 148. Cf. Square D Co. v. United Electrical, etc., Workers, D. C.E.D.Mich.1954, 123 F.Supp. 776; Markel Electrical Prod. Inc. v. United Electrical, etc., Workers, 2 Cir., 1953, 202 F.2d 435; Colonial Hardwood Flooring Co. v. International Union United Furniture Workers, D.C.D.Md.1948, 76 F.Supp. 493, affirmed 4 Cir., 168 F.2d 33; Metal Polishers, etc. v. Rubin, D. C.E.D.Pa.1949, 85 F.Supp. 363; United Electrical, etc., Workers of America v. Miller Metal Products, 4 Cir., 215 F.2d 221; Harris Hub Bed & Spring Co. v. United Electrical, etc., Workers, D.C.M. D.Pa.1954, 121 F.Supp. 40; R. O. Stenzel & Co. v. Dep't Store, etc., Local No. 955, D.C.W.D.Mo.1951, 11 F.R.D. 362; International Union, etc. v. Benton Harbor Malleable Industries, 6 Cir., 1957, 242 F.2d 536. Here the contract does not provide for pay on those days subsequently ruled not to be the proper holidays; and there was no express agreement that the Arbitrator was empowered to award damages, or to impose a penalty upon the company. Clearly, the awarding of pay, or the refusal to allow the company credit for wages already paid, is in the nature of an unauthorized penalty. Hence we must hold that the Arbitrator exceeded his authority and that plaintiff is entitled to the relief it seeks.

We have considered the cases upon which defendant principally relies, United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424; United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S. Ct. 1347, 4 L.Ed.2d 1409; and United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403, but regard them as distinguishable from this case. See Local 791, Intern. Union of Electric, etc., Workers v. Magnavox Co., 6 Cir., 1961, 286 F.2d 465.

For example, in American, the arbitration clause provided " * * * Disputes relating to discharges or such matters as might involve a loss of pay for employees may carry an award of back pay in whole or in part as may be determined by the Board of Arbitration." [363 U.S. 564, 80 S.Ct. 1345.] Again, in Enterprise, the arbitrator was given specific authority to make an award of back pay: "Should it be determined by the Company or by an arbitrator in accordance with the grievance procedure that the employee has been suspended unjustly or discharged in violation of the provisions of this Agreement, the Company shall reinstate the employee and pay full compensation at the employee's regular rate of pay for the time lost." [363 U.S. 593, 80 S.Ct. 1359.] Warrior & Gulf was simply a suit to compel arbitration, brought under Section 301, and did not involve an award of penalties, consequential damages or back pay. In the course of its opinion the Court said " * * * to be consistent with congressional policy in favor of settlement of disputes by the parties through the machinery of arbitration, the judicial inquiry under § 301 must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance or *did agree to give the arbitrator power to make the award he made.*" [363 U.S. 574, 80 S.Ct. 1353.] (Emphasis supplied.) None of these cases overruled, either expressly or by implication, the Fifth Circuit's holding in Refinery Employees Union of Lake Charles Area v. Continental Oil Co., supra, by which we believe we are bound.

This ruling does not mean that defendant's members are left without a remedy, for they may sue for any wages due them in the state Court. Neither they nor defendant may maintain such an action here. Mississippi Valley Electric Co. v. Local 130, etc., 5 Cir., 1960,

278 F.2d 764. What and all we are here holding is that the arbitration clause did not expressly or even impliedly give the Arbitrator the power to impose a penalty or award consequential damages, and, therefore, that the award must be set aside in that respect.

For the reasons given, there will be judgment for plaintiff as prayed.

Present decree accordingly.

## ON REHEARING

On July 17, 1961, we granted a rehearing in this case, on our own motion, because of apparent conflict between our opinion of July 11, 1961, and the opinion of the Fifth Circuit Court of Appeals in Lodge No. 12, District No. 37, International Association of Machinists v. Cameron Iron Works, Inc., 292 F.2d 112, rendered on June 27, 1961 (reh. den. July 28, 1961).

After consideration of Cameron, with which we do not agree (because we believe the Steelworkers cases are clearly distinguishable, as noted in our original opinion), and having studied all briefs filed on rehearing, as an inferior court we are forced to hold that our original decision was in error. The original judgment, therefore, will be set aside and there will be judgment for defendant as prayed, for the following reasons:

It is apparent from the collective agreement here that the parties neither *expressly* granted nor *expressly* denied to the Arbitrator power to fashion an appropriate remedy for the redress of injuries occasioned by a breach of the contract by either party. Any such power, therefore, must exist, if at all, by way of *implication* in the collective agreement. However, any implied agreement to empower the Arbitrator to fashion an appropriate remedy must be read against the parties' restriction that the Arbitrator's " * * * decision is confined to an interpretation or application of the terms and conditions of * * " the agreement.

In Cameron the collective agreement provided [1] that the " * * * terms and conditions of settlement shall be within the sole discretion of the Board

---

1. The Court, at 292 F.2d 115, set forth the following:

" 'Article IV—Grievance Procedure

" 'Section 1. It is the mutual intent and desire of the Union and the Company that employees make an effort to settle their problems or grievances with their Superior prior to resorting to the Grievance Procedure.'

* * * * *

" 'Section 2. Should any difference arise between the Company and any employee as to the meaning, application or interpretation of the provisions of this Agreement, such difference may constitute a grievance and shall be settled as follows:

" '[(a) through (f) described successive steps] * * *

" '(e) If the grievance is not satisfactorily adjusted by the General Manager or his designated representative, then arbitration may be invoked as provided in Article V.'

"Article V prescribed a Board of Arbitration composed of one member selected by the Union and one by the Company. The Union and the Company had to name their representatives within three days. Section 1 then provided:

" 'Before proceeding toward selection of the third member of the Board of Arbitration, the two representatives appointed by the parties shall attempt to effect a settlement of the controversy within five (5) days * * *. If it should appear that additional time would be helpful toward effecting settlement, this five (5) day period may be extended by mutual consent of the two representatives. In the event settlement of the controversy is not effected during such period * * the two representatives shall * * * select the disinterested member * * *.' Then follows the method of selecting the third member where the two others cannot agree.

"Article V, * * * then continues:

" 'Section 2. The Board of Arbitration shall render a decision within fifteen (15) days from the date the hearing is completed. The terms and conditions of settlement shall be within the sole discretion of the Board and the decision of a majority of the Board shall be final and binding on the parties; provided, however, the Board shall have no authority to violate, contravene, disregard or supplement the terms of this agreement.' "

\* \* \*." 292 F.2d 116, subject, however, to an exclusionary clause against " \* \* \* authority to violate, contravene, disregard or supplement the terms of \* \* \* " the agreement, Id. The Court there interpreted the exclusionary clause as something less than a positive declaration which would preclude the fashioning of an appropriate remedy by the Arbitrator. Strengthened in its belief by the clause providing that the " \* \* \* terms and conditions of settlement shall be within the sole discretion of the Board \* \* \*," the decision of the Arbitrator was held properly to include a determination of whether back pay (the remedy) was within the terms of the agreement, and, if so, whether it was an appropriate remedy. The Court did not find "clearly restrictive language" sufficient to diminish the "great latitude \* \* \* allowed in fashioning the appropriate remedy constituting the arbitrator's 'decision.'" 292 F.2d 119.

In the language of the Court, quoting from the Steelworkers cases, " 'When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his *informal judgment* to bear in order to reach a fair solution of a problem. *This is especially true when it comes to formulating remedies.* \* \* \* " (Emphasis added.) Id.

Here, as in Cameron, the decision of the Arbitrator or Arbitrators was contemplated as being " \* \* \* final and binding on the parties \* \* \*," subject, however, to the exclusionary clause which, it is noted, was more explicit in Cameron than here.

Under the broad teachings of Cameron, it is clear that, in order to deny the Arbitrator power to fashion an appropriate remedy for breach of the collective agreement, we must find clearly restrictive language negating the Arbitrator's power to fashion a remedy, thereby calling for application of the principle announced by the Court that, when doubt exists as to the arbitrability of an issue, it should be resolved in favor of arbitration. The collective agreement here does not clearly negative the existence of power in the Arbitrator to make an award. It must be held, therefore, that he possessed the power to make the award and assess the penalty which he entered.

For the reasons given, there will be judgment for defendants as prayed. .

Present decree accordingly.