**TAFT BROADCASTING COMPANY,**
Appellant,

v.

**RADIO BROADCAST TECHNICIANS LOCAL UNION NO. 253 OF the INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, Appellee.**

**No. 18965.**

United States Court of Appeals
Fifth Circuit.

Feb. 5, 1962.

Robert McD. Smith, Birmingham, Ala., J. Mack Swigert, Cincinatti, Ohio

(Lange, Simpson, Robinson & Somerville, Birmingham, Ala., of counsel), for appellant.

J. R. Goldthwaite, Jr., Adair, Goldthwaite & Stanford, Atlanta, Ga., for appellee.

Before RIVES, CAMERON and BROWN, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

The District Court held that the Employer was obligated to arbitrate a controversy over whether a radio station should be operated by remote control. The Employer appeals. We affirm.

The Employer operates a TV and two radio stations in Birmingham, Alabama. One radio station is an AM broadcast; the other an FM. Each radio station has a separate transmitter at separate locations. In October 1960 the Employer, without consulting the Union—representing the Technician Operators—determined to change the operation of its AM station. In the place of the direct control by a Technician at the transmitter, equipment was installed to permit remote control. The Union demanded that the Employer not make such change unilaterally and requested that the Employer discuss this. The Employer declined and persisted in its plan to install the remote control equipment. The Union then demanded arbitration.

The Employer, insisting that the controversy was not subject to arbitration, declined. It chooses to put the controversy in terms of whether the parties agreed to arbitrate the question whether the AM " * * * transmitter * * will be controlled remotely." The Union puts the issues in these terms: "The question for arbitration is whether the collective bargaining contract * * * prohibits [the Employer] from unilaterally changing work practices of the Technicians so that the AM transmitter is controlled remotely * * * thus * * adversely affecting * * * working conditions of the Technicians * * *."

Casting it in the terms it does, the Employer insists that remote versus direct control of a transmitter is a technical question exclusively within the domain of management judgment and decision. If this is arbitrable, so therefore, it urges, would be every other mechanical or electronic matter connected with operations. This would mean that the Employer would be completely divested of those characteristic rights and powers which are essential to orderly, efficient and successful management of a business. These serious consequences demonstrate, so the Employer argues, that before the Employer may be compelled to turn over such questions to an outside arbiter, there must be clear language in the contract for such submission. On this the Employer asserts, in perhaps more legalistic terms, its basic contention that this dispute is of a kind which is excluded from the scope of the contractual arbitration agreement. And, stated negatively, if the dispute is not expressly excluded, then it certainly was not "included."

How does this match against the arbitration agreement? It uses broad and sweeping language to provide that "All complaints, disputes or questions as to the interpretation, application, or performance of the terms of this"[1] contract shall be subject to arbitration.

█ Of course the question whether the parties promised to arbitrate a particular question is one for a Court. The trilogy of opinions[2] did not undertake to

1. Compare this with the terminology used in what was characterized as a standard arbitration clause in United Steelworkers v. American Manufacturing Co., 1960, 363 U.S. 564, at 565, 80 S.Ct. 1343, 1345, 4 L.Ed.2d 1403, where it read:

The parties bound themselves to arbitrate " * * * all disputes between the parties 'as to the meaning, interpretation and application of the provisions of this agreement.' "

2. United Steelworkers v. American Manufacturing Co., 1960, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403; United Steelworkers v. Warrior & Gulf Navigation Co., 1960, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409; United Steelworkers v. Enterprise Wheel & Car Corp., 1960, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424.

alter that principle. But those decisions are of extreme importance as we have since many times acknowledged. Lodge No. 12, District No. 37, International Ass'n of Machinists v. Cameron Iron Works, Inc., 5 Cir., 1961, 292 F.2d 112; International Ass'n of Machinists v. Hayes Corp., 5 Cir., 1961, 296 F.2d 238 [Nos. 18946 & 18947, Dec. 8, 1961, 296 F.2d 238]; Mississippi Valley Electric Co. v. Local 130, International Brotherhood of Electrical Workers, 5 Cir., 1960, 278 F.2d 764, modified, 285 F.2d 229, as a result of the Supreme Court decisions. Two principles are emphasized. First, the purpose to exclude a particular type of dispute from the arbitration promise must be clearly spelled out. And second, courts must overcome the temptation of passing on the intrinsic merits of the controversy under the guise of determining whether the dispute is within the promise to arbitrate.

██ But those principles do not dispense with the necessity that the controversy be one apparently within the promise to arbitrate. The requirement has been stated in terms of the limited role of the court. The court "is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract." 363 U.S. 564 at 568, 80 S.Ct. 1343, at 1346.

█ If we measure this in terms of the contentions being advanced by the Union, rather than in the prohibited framework of what we, as Judges, might conclude as a matter of legal contract construction, it is clear that the claim on its face rested on the contract. There was, thus, a dispute or question as to "the interpretation, application or performance" of the contract.

First, there was the immediate question of job security with which the Un-ion, by its very existence, was immediately concerned. When the Employer first announced that remote control facilities were being installed, it advised the Union that the contemplated change would result in additional job duties for some employees and the elimination of the jobs of other employees and the likely termination of their services.[3] At least one cited provision of the contract, § 16–A, dealt with the question of the termination of the employment of Technicians. It distinctively provided that "dismissal of Technicians by the Employer shall be a matter subject to" the arbitration machinery.

Next there were other specific clauses of the contract bearing upon the work of these transmitter Technicians. For example § 13–A and 13–C referred to performance of certain work functions at the AM transmitter thus indicating, the Union argues, that an "AM watch" would continue through the life of the agreement. More direct was § 13–D [4] which recognized that remote control for the FM transmitter could be installed and this the Union asserts, demonstrates inferentially that remote control of AM could not be.

█ To this the Employer advances arguments which may well be legally correct—and may even prevail before the arbiter—that these substantive provisions of the contract are not subject to this interpretation. But this is now forbidden territory. For we have pointed out that the "merits of the controversy may not be looked to by a court for the purpose of declaring that a correct legal interpretation of the contract would not support the construction sought. This may not be done directly, nor may it be done under the guise of determining that the matter is outside the agreement to arbitrate. * * *" Lodge No. 12, Dis-

---

3. As a predicate for Union apprehension concerning the adverse impact on its members, this was not altered by the Court's finding of fact that subsequent to installation of the remote control facilities, no Technician was dismissed or his services dispensed with.

4. § 13–D provided: "Nothing in this agreement shall be interpreted to preclude the installation and operation of FM remote control equipment at the AM transmitter by the transmitter Technician normally on duty."

trict No. 37, International Ass'n of Machinists v. Cameron Iron Works, Inc., 5 Cir., 1961, 292 F.2d 112 at 118.

The District Court was therefore correct in determining that the controversy was subject to arbitration and in entering the order to compel it to go forward.

Affirmed.