**INTERNATIONAL BROTHERHOOD OF PULP, SULPHITE AND PAPER MILL WORKERS, LOCAL UNION NO. 874, Appellant,**

v.

**ST. REGIS PAPER COMPANY, Appellee.**

No. 22551.

United States Court of Appeals
Fifth Circuit.

June 23, 1966.

Thomas A. Larkin and Larkin & Decker, Jacksonville, Fla., for appellant.

Guy Farmer, Washington, D. C., William D. Jones, Jr., Jacksonville, Fla., David W. Foerster, Jones & Foerster, Jacksonville, Fla., Patterson, Belknap & Farmer, Washington, D. C., for appellee.

Before PHILLIPS,* RIVES and COLEMAN, Circuit Judges.

ORIE L. PHILLIPS, Circuit Judge.

This is an appeal by International Brotherhood of Pulp, Sulphite and Paper Mill Workers, Local Union No. 874,[1] from an order dismissing a proceeding brought by the Union to set aside an arbitration award.

A collective bargaining agreement,[2] entered into by the Union and St. Regis Paper Company,[3] on August 29, 1964, was in force at all times here material.

We either set forth *in haec verba* or state the provisions of the agreement here pertinent:

Section 6 thereof in part provides:

"In the event a difference arises between the Company and the Union concerning the application or interpretation of the terms of this contract, all work shall continue without interruption pending the application of the grievance procedure, and if necessary, arbitration as hereinafter provided."

Section 8 of the agreement in part provides:

"A difference arising out of the interpretation or application of the terms of this Agreement may be submitted to the grievance procedure within three (3) scheduled working days (over road truck drivers five (5) working days) of the occurrence giving rise to the grievance and to arbitration within forty (40) working days of the occurrence, otherwise the grievance will be barred. Grievances shall be disposed of as follows."

Section 8 then sets forth a step-by-step procedure for the settlement of grievances, first, by negotiation between the aggrieved person and his immediate supervisor; and, if no settlement is reached, next, between the aggrieved person and his local committeeman and the next-highest supervisor; and if no settlement is reached, next, between the Union and the Plant Manager, after the grievance has been reduced to writing by the aggrieved employee, signed by him, and presented by the Union to the Plant Manager; and if no settlement is reached, next, by negotiation between the President of St. Regis or his representative and the International President of the Union or his representative, after the Union has referred the grievance to the International President of the Union and such International President or his representative has referred the matter in dispute to the President of St. Regis or his designated representative.

Paragraph 5 of Section 8 reads:

"5. If the President of the Company or his representative and the International President of the Union or his representative are unable to reach a satisfactory settlement of the complaint within seven (7) working days, after referred to 5th Step, either party may request arbitration within five (5) working days after the Company's decision has been given."

Section 8 further provides that the grievance shall be barred, unless, when a prescribed step does not result in a satisfactory settlement, a certain stated action in the next step is taken within a specified number of days.

Section 9 of the agreement prescribes the arbitration procedure by a board of three arbitrators and provides that "the decision of the majority of the Board of Arbitrators, * * * shall be binding upon both parties to this Agreement. * * * The Board of Arbitration does not have the right to alter, amend or enlarge the terms of this Agreement."

Section 27 of the agreement in part provides:

"SECTION 27. *Discipline of Plant Employees and Record of Same*
\* \* \* \* \* \*
"3. Extreme penalty of dismissal from service to be applied in all cases

---

* Of the Tenth Circuit, sitting by designation.

1. Hereinafter called the Union.

2. Hereinafter called the agreement.

3. Hereinafter called St. Regis.

of flagrant or willful violations of the rules of the Company, * * *. The extreme penalty shall also be applied in the case of an employee who persists in continued and repeated minor violations of the Company's rules as shown by the discipline record of such employee.

"4. An employee who has received a warning slip, but has a completely clear record for a period of six (6) months preceding an offense in question shall be considered as committing a 'First Offense.'"

Edward Stacks was a member of the Union and was employed by St. Regis as a truck driver. On May 24, 1963, while driving a St. Regis truck on U. S. Highway 17, near Hardeeville, South Carolina, Stacks was involved in a traffic accident with a motor vehicle driven by Louis Farmer. Farmer had to apply his brakes to avoid driving into a pickup truck in front of him, and Stacks, traveling immediately behind Farmer and in the same direction, failed to stop, and the St. Regis truck crashed into Farmer's vehicle, resulting in the wrecking of the St. Regis truck and very substantial damages. Stacks was dismissed from service by St. Regis.

Pursuant to the arbitration provision of the agreement, the question of whether Stacks was properly discharged was submitted to arbitration. By agreement of the parties a "panel was waived" and Gordon A. Duncan was selected as the sole arbitrator.

The record does not contain a transcript of the proceedings before the arbitrator, but includes the opinion and the award of the arbitrator, dated June 19, 1964, from which the following appears:

It was agreed that the witnesses need not be sworn. St. Regis contended the discharge was proper under the terms of the contract and introduced the records of four instances in addition to the May 24, 1963, accident when Stacks had been involved in traffic accidents while he was driving a St. Regis motor vehicle and was violating traffic laws. After each of such four accidents, Stacks received a warning notice. The accident of May 24, 1963, occurred more than six months after the accident immediately preceding it. Following the May 24, 1963, accident, Stacks was arrested by an officer of the South Carolina State Highway Patrol, taken before a magistrate, and charged with "following too close." He gave bond, failed to appear, and his bond was forfeited. The magistrate undertook to reduce the charge from "following too close" to "faulty brakes." Patrolman Vereen, who arrested Stacks, stated that he did not agree to the change; and another officer, Corporal Ulmer, who was familiar with the facts, contacted the magistrate and advised him the "patrol" would take no part in such a change in the charge and that he and Vereen insisted the charge of "following too close" was the proper one.

The Union introduced a letter signed by William T. Cursen, wherein he stated he was following the St. Regis truck and in his opinion Stacks was not "following too close" and could have stopped the St. Regis truck in time, had it been equipped with "sufficient brakes." The Union also introduced a letter signed by Farmer, wherein he stated when he first applied his brakes the St. Regis truck was about 300 feet behind him, but he did not undertake to state the distance when Stacks first applied his brakes.

The arbitrator stated in his decision that "nothing definite has been submitted to show * * * any defect in the brakes."

The arbitrator chose to accept the opinion of the Highway Patrol officers based on facts they ascertained when they investigated the accident. Of course, skid marks would be much more conclusive than Cursen's opinion. Stacks was present at the hearing before the arbitrator, but did not testify.

The arbitrator found that the evidence substantially preponderated in support of the claim of St. Regis, was "clear and

convincing" and was "sufficient to convince a reasonable mind" that Stacks's "carelessness" caused the accident.

The arbitrator concluded that the carelessness of Stacks and his accident on May 24, 1963, would not have constituted grounds for discharge, had he had a previous good record, but when considered in the light of his previous bad driving record, was sufficient to warrant discharge.

The arbitrator held Stacks was properly discharged, but recommended he be offered the job of laborer, but without pay for time not worked.

On September 16, 1964, the Union filed in the United States District Court for the Middle District of Florida, a motion to vacate the award on the grounds "the arbitrator was arbitrary, capricious and grossly abused his discretion in making his award"; that the "award had no basis in fact"; and that the "award was in direct conflict with the terms of the" agreement. It attached to the motion a copy of the arbitrator's "Opinion and Award."

The court ordered the motion to be treated as a complaint and directed St. Regis to respond thereto by such pleading as it was advised. St. Regis moved to dismiss the complaint on the ground that the court lacked jurisdiction under 28 U.S.C.A. §§ 1331, 1332; 29 U.S.C.A. § 185, or under "any other law" to grant the relief sought, and failed to state a claim upon which such relief could be granted.

The court held it had no jurisdiction to review the award. The Union stated it had no further or additional facts it desired to allege by way of any amendment to its complaint. Whereupon, the court dismissed the cause with prejudice.

Counsel for the Union rest their claim that the court had jurisdiction to vacate the award on 29 U.S.C.A. § 185, and they assert such jurisdiction exists because under that section the court has power to enforce the agreement. They cite and rely on Textile Workers Union v. Lincoln Mills of Alabama, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972.

We think it is settled law that an award of an arbitrator under an arbitration provision in a collective bargaining agreement, which provides the arbitrator's decision shall be final and binding on the parties, is not open to review on the merits. The merits embrace not only asserted errors in determining the credibility of witnesses, the weight to be given their testimony, and the determination of factual issues, but also the construction and application of the collective bargaining agreement, where the bargaining agreement provides, as here, that "a difference arising out of the interpretation or application of the terms of" the "Agreement" shall be submitted to the grievance procedure within a specified time or the grievance shall be barred, and in the event it is not settled by the last prescribed step in the grievance procedure, "either party may request arbitration" of the dispute and that the decision of the arbitrator "shall be binding upon both parties."

It is fairly arguable that Paragraph 4 of Section 27 is subject to the interpretation that where the employee has a clear record for a period of six months preceding the "offense in question" it shall be considered a first offense and not a second offense, notwithstanding an act of like improper conduct which occurred before the inception of the six-month period, and not a third offense, notwithstanding two acts of like improper conduct, the last of which occurred before the inception of the six-month period, but that it was not intended to apply to repeated acts of misconduct amounting to a course of action; and it is further fairly arguable that Paragraph 3 of Section 27 is intended to apply to cases of persistent and continued violations so great in number as to amount to a course of misconduct, and that five like acts of misconduct amount to a course of action, even though the last violation occurred more than six

months after the one immediately preceding it. Hence, we say the arbitrator's interpretation was not so wholly impermissible as to be arbitrary or capricious.

 And it matters not that this court, if the merits of the award were open to review, might differ with the arbitrator with respect to his findings of fact and might place a different construction on the agreement than did the arbitrator.[4]

Our conclusion finds support in the adjudicated cases.

In United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, at page 596, 80 S.Ct. 1358, at page 1360, 4 L.Ed.2d 1424, the court said:

"The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards."

And the court, at pages 598 and 599, 80 S.Ct. at pages 1361 and 1362 of the opinion in that case, in response to a major argument, as here, that the arbitrator incorrectly interpreted the collective bargaining agreement, said:

"* * * The acceptance of this view would require courts, even under the standard arbitration clause, to review the merits of every construction of the contract. This plenary review by a court of the merits would make meaningless the provisions that the arbitrator's decision is final, for in reality it would almost never be final.

* * * It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his."

And this court in Lodge No. 12, District No. 37, International Association of Machinists v. Cameron Iron Works, 5 Cir., 292 F.2d 112, at page 118, said:

"* * * The merits of the controversy may not be looked to by a court for the purpose of declaring that a correct legal interpretation of the contract would not support the construction sought. * * *"

 Here, the factual determinations of the arbitrator were based on evidence; and his decision that under provisions of the agreement he could properly consider the past bad driving record of Stacks, involving traffic violations, in appraising his carelessness and involvement in the accident of May 24, 1963, was a permissible interpretation of the agreement.

The Union's complaint, as bare legal conclusions, charges the arbitrator acted arbitrarily and capriciously, but it and the record before us are wholly barren of any facts, either alleged or shown, warranting a finding that the arbitrator so acted. Whether, had such action been shown, judicial review would be open, we do not decide.

We conclude the court properly dismissed the cause with prejudice.

Affirmed.

4. United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424;
Lodge No. 12, District No. 37, International Association of Machinists v. Cameron Iron Works, 5 Cir., 292 F.2d 112;
United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 568, 80 S.Ct. 1343, 4 L.Ed.2d 1403;

Taft Broadcasting Company v. Radio Broadcast Technicians Local Union 253 of the International Brotherhood of Electrical Workers, 5 Cir., 298 F.2d 707, 709;
United Brick & Clay Workers of America v. A. P. Green Fire Brick Company, 8 Cir., 343 F.2d 590, 593.