## PIGGLY WIGGLY OPERATORS' WAREHOUSE, INC.

v.

## PIGGLY WIGGLY OPERATORS' WAREHOUSE INDEPENDENT TRUCK DRIVERS UNION, LOCAL NO. 1.

### Civ. A. No. 770656.

United States District Court,
W. D. Louisiana,
Shreveport Division.

Sept. 9, 1977.

John E. McFall, Kullman, Lang, Inman & Bee, New Orleans, La., for plaintiff.

L. Edwin Greer, Johnston, Thornton, Greer & Cage, Shreveport, La., for defendant.

DAWKINS, Senior District Judge.

## RULING ON MOTION

Defendant Union has filed a motion for rehearing seeking reversal of our July 26 ruling on cross motions for summary judg-

ment.[1] We therein denied the Union's motion for summary judgment in this § 301 [1a] action and granted plaintiff's motion, which served to set aside an arbitrator's award reinstating, with back pay, a discharged employee.

This controversy stems from the company's dismissal of Russell E. Strickland, a truck driver and Union member. Under the terms of a newly negotiated collective bargaining agreement, employees who became uninsurable by any of the company's insurance carriers were subject to immediate discharge.[2] In some manner, the company and its insurer determined that Strickland and a few other drivers were high risks and had to be removed from insurance coverage. Strickland was fired abruptly thereafter. Fruitless exercise of grievance procedures resulted in arbitration.[3]

Dr. Lawrence Mann, Jr., was selected to arbitrate Strickland's grievance. For reasons to be reviewed shortly, Mann ordered that Strickland be reinstated with full seniority and reimbursed for wages lost, less any pay or compensation received elsewhere.

The company, in seeking to have the award voided argues that Mann exceeded his arbitral authority. The company points to the customary language of Article 24(K), Step IV, in the collective bargaining agreement which provides that

"The arbitrator shall have no authority to change, amend, add to, subtract from, modify or amend any of the terms or provisions of this agreement."

The modern view of arbitration is rooted in the so-called *Steelworkers* trilogy cases.[4] Because arbitration furthers the national policy of promoting industrial harmony, the role of a reviewing court under § 301 must be narrowly focused. Clearly, the merits of an award are not subject to scrutiny. But beyond this maxim, there are traps for the unwary. The Supreme Court frames the issue thus:

"When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies. There the need is for flexibility in meeting a wide variety of situations. The draftsmen may never have thought of what specific remedy should be awarded to meet a particular contingency. Nevertheless, an arbitrator is confined to interpretation and application of the collective bargaining agree-

---

1. 434 F.Supp. 83.

1a. Section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185, provides:

"Suits for violation of contract between an employer and the labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy, or without regard to the citizenship of the parties."

See generally *Textile Workers v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957) (substantive law to be applied in suits under § 301(a) is federal law, which courts must fashion from the policy of our national labor laws).

2. Article 21(Z) of the collective bargaining agreement provides:

"Any driver who becomes uninsurable by any of the company's insurance carriers will be subject to immediate discharge."

3. Article 24(A) of the collective bargaining agreement provides:

"For purposes of this agreement, a grievance is defined as being an expressed difference or dispute between an employee or employees and the company or the union and the company, with respect to the interpretation or application of a provision of this agreement, or a claim by any employee covered by this agreement that he has been unjustly treated or discriminated against."

Article 24(K), Step IV, states that

"A grievance may become a subject of arbitration after all steps of the grievance procedure heretofore described have been followed."

4. *United Steelworkers of America v. American Manufacturing Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior and Gulf Nav. Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

ment; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement." [5] Seizing upon the lattermost quoted language, some courts have required that arbitrators adhere strictly to the terms of the collective agreement.[6] Emphasizing the contractual nature of the proceedings, these decisions void awards which appear to contravene express limitations on the authority of the arbitrator.

We followed this reasoning in our prior ruling setting aside Dr. Mann's award. His decision seems to assume the invalidity of provision 21(Z) because the Union allegedly failed to consent to that article's inclusion in the collective agreement. The arbitrator felt that the Union's agent had signed the agreement without knowing that 21(Z) was included. This assumption seemed patently violative of the language in Article 21(Z), Step IV, which precluded the arbitrator from amending or subtracting from the terms of the agreement as written.

■ Upon reflection, we must reverse our prior ruling. According to the scope of review of § 301 actions presently adhered to by this Circuit, Arbitrator Mann's decision is final.

■ Where an award draws *its essence* literally from the collective agreement, reviewing courts are without authority to interpose their own judgment. *United Steelworkers of America v. Enterprise Wheel & Car Corp., supra.* The standard that an award draw its essence from the collective agreement is to be interpreted *expansively,* so as to uphold the arbitrator's award, not restrictively. *International Association of Machine and Aerospace Workers, Dist. 776*

*v. Texas Steel Co.,* 538 F.2d 1116 (5th Cir. 1976).

■ The company does not contend that Strickland's discharge was not subject to arbitration. Rather, it is apparently urged that Dr. Mann impermissibly exceeded the scope of the submission as delineated by the contract. Under the collective agreement, arbitration served as the terminal point in the grievance procedure. A grievance is defined in Article 24(A) of the agreement as "an expressed difference or dispute between an employee or employees and the company or the union and the company, with respect to the interpretation or application of a provision of this agreement, or a claim by any employee covered by this agreement that he has been unjustly treated or discriminated against." The slightest evidence that the arbitrator's award drew its essence from the collective bargaining agreement is sufficient to uphold the award. We now must find the arbitrator felt that Strickland's release was unjust. In his written decision, Dr. Mann states:

"The Arbitrator is also concerned that the Grievant was given no opportunity to present his case or to justify the notations made on the state record. Indeed, testimony given at the hearing indicated that such appeals are common in the insurance industry and that often additional evidence such as was brought out in those appeals cause insurers to alter their decisions."

Strickland offered evidence that the company at least tacitly approved of drivers speeding to meet route schedules. It must be assumed that the arbitrator felt this fact, if proven, might have excused the number of speeding violations on Strickland's driving record.

■ Moreover, there is strong language in Dr. Mann's arbitral decision to indicate he believed the progressive discipline provisions were inconsistent with Article 21(Z). We cannot say that the award does not

**5.** 363 U.S. at 597, 80 S.Ct. at 1361.

**6.** *Torrington Co. v. Metal Products Workers, Local 1645,* 362 F.2d 677 (2nd Cir. 1966); *Truck*

*Drivers and Helpers Union, Local 784 v. Ulry-Talbert Co.,* 330 F.2d 562 (8th Cir. 1964); *Textile Workers v. American Thread Co.,* 291 F.2d 894 (4th Cir. 1961).

draw its essence from the collective agreement.[7]

 To be sure, arbitrators are bound by contractual restrictions on their authority. These are fruits of the give and take of negotiations between management and labor. However, any intention to exclude must be express. *Lodge No. 12, Dist. No. 37, International Association of Machinists v. Cameron Iron Works, Inc.*, 292 F.2d 112 (5th Cir. 1961); *Minute-Maid Company v. Citrus, Cannery, Food Processing and Allied Workers, Drivers, Warehousemen, and Helpers, Local Union No. 444*, 331 F.2d 280 (5th Cir. 1964). We earlier ruled that Dr. Mann had violated such a restriction. However, that ruling reflected too close a scrutiny of the arbitrator's written decision. We note the following language from *Enterprise Wheel*:

"A mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award." 363 U.S. at 598, 80 S.Ct. at 1361.

 There is every indication that Dr. Mann's award was a proper exercise of the authority granted him under the collective agreement. While there is language in his written decision to indicate he disregarded Article 21(Z), we do not think it crucial to the award. Arbitration was intended to resolve contentions of unfairness as well as disputes arising from interpretation and application of the collective agreement. It is expected that the arbitrator will bring his informed judgment to bear in order to reach a fair solution. Arbitrators can achieve justice in situations not contemplated by or not adequately covered in existing collective bargaining agreements. *United Steelworkers of America v. Reliance, Inc.*, 335 F.2d 891 (3rd Cir. 1964). The general restricting language of Article 24 should not be used effectively to circumscribe the arbitrator's proper function.[8]

Rather, it was the arbitrator's expertise which was bargained for and his award should be allowed to stand. Since the cause came to us by way of cross motions for summary, rather than grant rehearing, we reverse our earlier ruling, and hereby grant defendant's motion for summary judgment denying plaintiff's motion for summary judgment. Defense counsel should file an appropriate order within five days hereof for our signature.

---

**7.** See *United Steelworkers of America v. United States Gypsum Co.*, 492 F.2d 713 (5th Cir. 1974); *Dallas Typographical Union No. 173 v. A. H. Belo Corp.*, 372 F.2d 577 (5th Cir. 1967).

**8.** See *Dallas Typographical, supra.*