UNITED FURNITURE WORKERS OF AMERICA, A.F.L.-C.I.O., and its agent Local No. 270, Plaintiffs,

v.

FORT SMITH COUCH & BEDDING COMPANY, Defendant.

No. 1690.

United States District Court
W. D. Arkansas,
Fort Smith Division.

Feb. 20, 1963.

McMath, Leatherman, Woods & Young-dahl, Little Rock, Ark., for plaintiff.

Shaw, Jones & Shaw, Fort Smith, Ark., for defendant.

JOHN E. MILLER, Chief Judge.

The motion of plaintiffs, filed January 29, 1963, for summary judgment, together with the response of defendant, filed February 8, 1963, with its exhibits are before the court.

The parties have submitted written briefs in support of their respective contentions.

On a motion for summary judgment the burden of establishing the nonexistence of any genuine issue of fact is upon the moving party. All doubts are resolved against him. The object of the motion is to separate the formal from the substantial issues, raised by the pleadings, and the court examines all the record evidence whether in the form of affidavits, depositions or exhibits, not to decide any issue of fact which may be presented, but to discover if any real issue exists. Marion County Co-Op. Ass'n v. Carnation Co. (W.D.Ark.1953), 114 F.Supp. 58, 63–65, aff'd (8 Cir., 1954) 214 F.2d 557. If no genuine issue as to any material fact exists and the court is convinced that the moving party is "entitled to a judgment as a matter of law," the motion should be granted; otherwise it should be denied. Rule 56, Fed.R.Civ.P.

With the above rules in mind, the court proceeds to examine and consider the record before it.

It is admitted by the pleadings that the plaintiffs are labor organizations representing employees in an industry affecting commerce within the meaning of the Labor Management Relations Act, 1947, as amended, 29 U.S.C. §§ 153–187; that the defendant is an employer engaged in the manufacture of furniture products for interstate commerce at its plant in Fort Smith, Arkansas, which industry affects commerce within the meaning of the Labor Management Relations Act, as amended; and that in April 1962 the parties entered into a collective bargaining agreement effective April 1 to March 31, 1963, covering wages, hours, and other terms and conditions of employment applicable to certain employees.

Article IX provides for "Adjustment of Grievances," and since it is necessary to consider the provisions of that article, it is set forth in full in footnote[1].

1. "Section 1. Any individual employee who has a complaint or grievance shall first take the matter up either with his foreman, or he shall have the right to have the matter presented to his foreman with the assistance of his department Shop Steward.

"Any complaint or grievance involving or affecting more than one employee shall be taken up first by the Department Steward with the foreman of the department involved.

"If no settlement is made, the Shop Steward's Committee shall take the matter up in writing with the Plant Superintendent. If no settlement is reached within forty-eight (48) hours (excluding non-working days) after such written presentation, the complaint shall be considered between representatives of the management and an officer or committee of the Union. If no settlement is reached thereby within a further period of forty-eight (48) hours (excluding non-working days) the complaint shall be taken up between Bruce H. Shaw on behalf of the Company and the Business Representative of the Union. If still no settlement is made within four (4) business days, then resort may be made to arbitration before the Commission hereinafter provided for.

"Section 2. There is hereby created a Commission, the powers and duties of which are hereinafter defined, which shall consist of the following three persons who are hereby jointly, mutually and severally appointed by the parties: Bruce H. Shaw, representing the Company, the Business Representative of the Union, and Reverend Leo C. Brown, S. J.

"Section 3. In the event of the subsequent withdrawal or inability to act of Bruce H. Shaw or the Business Representative of the Union, their successor shall be named by their respective constituents. In the event that Reverend Leo C. Brown, S. J., is unable to act within two weeks after notice is given, the parties shall promptly request the Federal Mediation and Conciliation Service to submit a list of five (5) qualified arbitrators. From such list the parties shall alternately strike one name until only one remains and that individual shall be requested to serve as arbitrator.

"Section 4. Either the Company or the Union shall have the right to have submitted to the Commission for adjudication any complaints or grievances against the other party or any member, constituent or representative thereof, whether such complaint or grievance arises out of the construction or application of any provision of this Agreement or out of any matter pertaining to employer-employee relations not covered by this Agreement. If the Union and the Com-

Paragraphs numbered V and VI of the complaint are as follows:

"V.

"In accordance with Article IX of the said contract, grievances alleging contract violations were filed by employees of the defendant as follows: (1) grievance dated August 29, 1962, concerning rates of pay for work on a product described as Suit No. 558; (2) grievance dated September 11, 1962 concerning rates of pay for work on a product described as Studio No. 921; (3) grievance dated October 29, 1962 concerns rates of pay for work performed by employee Lone LaRue.

"The three aforementioned grievances were processed through the contract grievance procedure without settlement to the satisfaction of the plaintiffs or their members.

"VI.

"By oral and written communication, defendant repeatedly has refused and continues to refuse to arbi-

pany exhaust the procedure for the adjustment of grievances provided for in Section 1 above and no satisfactory conclusion is reached, then the grievance or complaint shall be submitted to Mr. Shaw and the Business Representative of the Union for disposition. If no satisfactory disposition is possible, then either side may appeal to the Commission for adjudication. All such complaints shall be in writing and signed by the aggrieved party, and a copy thereof furnished to the adverse party, and the original complaint shall be filed with the Commission within five (5) days after the last previous step has been exhausted. The Commission shall then act upon and dispose of such complaint as expeditiously as possible, it being the intention of the parties that the matter be heard by the Commission within two weeks, or as soon thereafter as possible from the time it is referred to it.

"Section 5. Said Commission shall have the power, duty and authority to:

"(a) Consider, pass upon and decide any and all complaints or grievances submitted pursuant to Section 4, and to determine any question of its own jurisdiction, except to time studies;

"(b) Establish rules or procedures relating to the form and manner of presenting or hearing complaints or grievances and shall give due and timely notice to parties in interest of any hearings or actions thereon;

"(c) Make such orders of restitution, rectification or penalty against any person or party as may be fair and equitable under any given circumstances;

"(d) Do any and all other things reasonably necessary or incident to the carrying out of the foregoing powers, duties and authorities.

"Section 6. The Commission shall not have the power to add to or subtract from or change any of the terms of this Agreement.

"Section 7. All decisions of the Commission or of a majority of the three members thereof shall be final, conclusive and binding on all parties and there shall be no appeal from such decision. All parties agree to abide by and comply with any and all decisions or orders made by said Commission.

"Section 8. The Commission in deciding all issues properly submitted to it shall be guided by a desire to treat all persons with fairness and equity consistent with fair treatment of workers and with the necessity for uninterrupted and profitable operation by the Employer, to the end that mutually harmonious relations between the parties may prevail during the entire period of this Agreement.

"Section 9. On new or changed operations, the correctness of the time studies shall be subject to arbitration. In disputes involving time studies, the Union and Company shall appoint one member each. These two members shall meet, and if unable to agree upon an industrial engineer to arbitrate said dispute, then both parties shall immediately request the United States Conciliation Department to submit a list of five industrial engineers within this area as nearly as possible. The Company shall strike off the first name, the Union the second, and so on, and the last remaining shall be the impartial arbitrator.

"Section 10. All expenses incident to the existence and operation of the Commission and other arbitration procedures shall be borne equally by the Company and the Union.

"Section 11. In deciding any grievance involving a claim for back pay, the arbitrator shall not award back pay in excess of five (5) days prior to the filing of the grievance in writing with the Plant Superintendent, as provided in Section 1 of this Article."

trate the said grievances. In addition to the merits of the grievances themselves, plaintiffs have offered to submit questions of procedural compliance and whether or not the issues involved 'new or changed operations' within the meaning of Section 9 of Article IX, but the defendant includes [insists] in its continuing refusal to arbitrate such correlative questions as well. In spite of compliance by plaintiffs with all conditions precedent to arbitration, defendant has violated and continues to violate the contract, and particularly its Article IX, by refusing to carry out its promise to arbitrate the said grievances."

The plaintiff prayed for specific performance of the contract, and "ask this court to order defendant to carry out its agreement to arbitrate * * * for all costs and attorneys' fees * * * and for all other relief to which they may be entitled."

In numbered paragraph VI of its answer, the defendant denied "each and every material allegation contained in Paragraph VI of plaintiffs' complaint."

In paragraphs VII, VIII and IX of its answer the defendant alleged that grievances denominated (1) and (2) in paragraph V of the complaint "were not in proper form to be arbitrated in that they seek comparison of job rates in violation of the terms of the collective bargaining contract * * * that notwithstanding their defective form and claim to relief outside the contract, the Defendant assented to the arbitration of the so-called grievances under Article IX, Section 9, with the requirement only that said grievances be put in proper form as grievances under the terms of the contract. The plaintiffs failed, neglected and refused to re-submit the grievances denominated as (1) and (2) in proper form notwithstanding an arbitrator had been selected under the terms of Article IX, Section 9, of the contract for the purpose of hearing these and other matters and the Defendant was ready and willing to submit them; that the De-

fendant is still ready and willing to submit these grievances (1) and (2) when placed in proper form to an arbitrator to be selected under Article IX, Section 9, of the contract; that the alleged causes of action on grievances denominated as (1) and (2) are premature and frivolous and should therefore be dismissed.

" * * * that as to that grievance denominated as (3) in Paragraph V of the Plaintiffs' complaint the Defendant has stood ready and willing at all times to arbitrate under the provisions of Article IX, Section 9, of the contract and is still ready and willing to select an arbitrator under the method provided by said Article IX, Section 9, of the contract and proceed to arbitrate the same.

" * * * that as to grievances denominated as (1), (2) and (3) in Paragraph V of the Plaintiffs' Complaint the same are on their face complaints in the nature of grievances that have to do with 'new or changed operations' and if properly processed as grievances and properly submitted under the contract would be determined by an arbitrator selected under Article IX, Section 9, of the contract and in the manner set out in said Article IX, Section 9, of the contract."

The employees of the defendant filed three grievances.

(1) August 29, 1962. "The rate on suite # 558 is not set to enable employees to make the rate comparable to the # 527 suite. * * * We ask the Company to adjust the rate on the basis of the 537 suite with back pay adjustment."

The Plant Manager in considering the grievance stated: " * * * # 558 was placed in the line July 1962; therefore, it is a new suite requiring a new rate. Suite # 558 is not identical to Suite # 537, especially in regard to cover trim. There is an extra panel across the front at the bottom the length of the suite on Suite # 537. Even if we did have suites that were identical in some respects but still sufficiently different to be called a new suite, the Contract says nothing about comparing a new suite to an old suite. It states that all new suites shall

have new rates properly established. I have no alternative but to reject your grievance on the Superintendent's level."

(2) September 11, 1962. "The rate on the 921 studio is not in line with the other studio suites. * * * We ask the Company to compare the 921 studio suite with the 920 suite, or time study the change, which means only the welt, with back pay adjustment."

The Plant Manager, in rejecting the grievance, stated that the contract says nothing about a new rate being comparable to some old rate, and nowhere does it mention establishing a new rate for a new suite in line with other suites or old suites previously in effect. Some rates in the plant are considered "loose" rates and some are considered "tight." "We would have an impossible problem of establishing new rates if we first had to meet with the Union and decide on which old rate we should compare our new rate to. That is the reason the Contract spells out exactly how new rates are to be established. We establish rates as accurately as possible by the use of time study or various elemental times that we may consider as being sufficiently accurate to arrive at a new rate. We are constantly improving our time study data so that we can save engineering time and establish rates based on proven data. However, in this case no data was used; this is a new Suite, two inches lower in the back, which requires no welt at the top of the back and no welt at the front of the bed. It is strictly a pull over cover which is of course easier than where there is a welt at the top of the back. Special effort was made to be very positive that this rate was established properly. In fact the benefit of the doubt was added to this rate to be sure that there would be no question that the average operator could make 5 plus 5 plus 20%. I have no alternative but to reject your grievance on the superintendent's level."

(3) October 29, 1962. "The undersigned jobs of Lone LaRue has been cut without cause. The company claims there has been a change. The Union feels there has been no change to justify the Company actions, but if the arbitrator finds there is a change, there was too much took off for the change. * * * We ask the Company to leave the rates mentioned as was, with back pay adjustment."

The Plant Superintendent, in rejecting the grievance, said "Two changes occurred in this operation. We made a test with our Dealers to see if we would get any complaints by eliminating the sanding of the spindles on the # 1006, # 306. This proved to be satisfactory so it was decided to eliminate the work of sanding spindles. The other change was in the stain by using a spray stain instead of a dip stain. This makes a considerable difference in the amount of sanding required since the dip stain contained a large amount of water while the spray stain does not. Since there were approximately 75 rates involved, to change them all, required a considerable amount of time study. To avoid confusion we installed these as of last Monday with all change properly made and with liberal extra earning opportunities easily complying with the Contract for a 5 + 5 + 20 allowance. This is a case where work is eliminated completely and otherwise, where the operation is changed 100%. Therefore, this grievance is rejected on the Superintendent's level."

The plaintiffs contend that the defendant continues to refuse to arbitrate the grievances and that they have offered to submit questions of procedural compliance and whether or not the issues involved "new or changed operations" within the meaning of Section 9 of Article IX, but that the defendant continues to refuse to arbitrate such "correlative questions as well," and that the defendant "continues to violate the contract and particularly its Article IX, by refusing to carry out its promise to arbitrate the said grievances."

The defendant contends that the grievances "were not in proper form to be arbitrated in that they seek comparison of job rates in violation of the terms of the collective bargaining contract," and

that it assented to the arbitration of the "so-called grievances under Article IX, Section 9, with the requirement only that said grievances be put in proper form as grievances under the terms of the contract." That the plaintiffs have failed and refused to re-submit their grievances denominated as (1) and (2) in proper form notwithstanding an arbitrator has been selected under the terms of Article IX, Section 9 of the contract, and "that the Defendant is still ready and willing to submit these grievances (1) and (2) when placed in proper form to an arbitrator to be selected under Article IX, Section 9 of the contract; that the alleged causes of action on grievances denominated as (1) and (2) are premature and frivolous and should therefore be dismissed."

The Plant Manager of the defendant submitted an affidavit in which he stated that he is "in direct charge of the defendant's labor relations and union contract negotiations. * * * that the grievances denominated (1) and (2) * * * concern new products or new items or products * * * drastically changed so that they are new items under the terms of the collective bargaining contract * * *."

As to grievance (3) the defendant contends that it has been ready and willing at all times to arbitrate that grievance under the provisions of Article IX, Section 9, of the contract and is still ready and willing to select an arbitrator under the method provided for by said Article and Section."

Section 301 of the Labor Management Relations Act, 61 Stat. 156, 29 U.S.C. § 185, provides:

"(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter * * *, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

■ By the enactment of the statute, the Congress expressed the federal policy, "that federal courts should enforce these agreements on behalf of or against labor organizations and that industrial peace can best be obtained only in that way." Textile Workers Union of America v. Lincoln Mills of Alabama, (1957) 353 U. S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972. In the same decision the court held that jurisdiction to compel arbitration of grievance disputes is not withdrawn by the Norris-LaGuardia Act, 47 Stat. 70, 29 U.S.C. § 101.

By Section 2 of Article IX of the contract a Commission is created with the powers and duties defined in subsequent sections of Article IX.

The first sentence of Section 4 of Article IX provides:

"Either the Company or the Union shall have the right to have submitted to the Commission for adjudication any complaints or grievances against the other party or any member, constituent or representative thereof, whether such complaint or grievance arises out of the construction or application of any provisions of this Agreement, or out of any matter pertaining to employer-employee relations not covered by this Agreement."

Section 5 of the Article provides that the Commission "shall have the power, duty and authority to:

"(a) Consider, pass upon and decide any and all complaints or grievances submitted pursuant to Section 4, and to determine any question of its own jurisdiction, except to time studies;

"(b) Establish rules or procedures relating to the form and manner of presenting or hearing complaints or grievances and shall give due and timely notice to parties in interest of any hearings or actions thereof;

"(c) Make such orders of restitution, rectification or penalty against any person or party as may be fair

and equitable under any given circumstances;

"(d) Do any and all other things reasonably necessary or incident to the carrying out of the foregoing powers, duties and authorities."

Section 6 provides that the Commission "shall not have the power to add to or subtract from or change any of the terms of this Agreement."

It will be noted that the Commission (arbitrators) shall have the power and duty to determine any question of its own jurisdiction, except to time studies. In other words, all grievances except those involving time studies shall be submitted to the Commission created by Section 2, which shall consist of three persons named therein or their successors selected as provided in Section 3 of Article IX.

Any question involving time studies is arbitrated under Section 9 of Article IX, which section provides:

"On new or changed operations, the correctness of the time studies shall be subject to arbitration. In disputes involving time studies, the Union and Company shall appoint one member each. These two members shall meet, and if unable to agree upon an industrial engineer to arbitrate said dispute, then both parties shall immediately request the United States Conciliation Department to submit a list of five industrial engineers within this area as nearly as possible. The Company shall strike off the first name, the Union the second, and so on, and the last remaining shall be the impartial arbitrator."

In United Steelworkers of America v. American Mfg. Co., (1960) 363 U.S. 564, 80 S.Ct. 1363, 4 L.Ed.2d 1403, the court at page 566 of 363 U.S. quoted from Section 203(d) of the Labor Management Relations Act, 1947, 61 Stat. 154, 29 U.S.C. § 173(d), as follows: "Final adjustment by a method agreed upon by the parties is hereby declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement," and commenting upon said section said:

" * * * That policy can be effectuated only if the means chosen by the parties for settlement of their differences under a collective bargaining agreement is given full play."

Beginning at the bottom of page 567 of 363 U.S., of page 1346 of 80 S.Ct. the court said:

" * * * The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator. In these circumstances the moving party should not be deprived of the arbitrator's judgment, when it was his judgment and all that it connotes that was bargained for.

"The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim. The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious. The processing of even frivolous claims may have therapeutic values of which those who are not a part of the plant environment may be quite unaware."

In United Steelworkers of America v. Warrior & Gulf Navigation Co. (1960), 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409, the court at page 585 of 363 U.S., at page 1354 of 80 S.Ct. said:

"The judiciary sits in these cases to bring into operation an arbitral process which substitutes a regime of peaceful settlement for the older

regime of industrial conflict. Whether contracting out in the present case violated the agreement is the question. It is a question for the arbiter, not for the courts."

See, also, United Steelworkers of America v. Enterprise Wheel & Car Corp. (1960), 363 U.S. 593, 80 S.Ct. 1358, 4 L. Ed.2d 1424.

The provisions of the contract providing for arbitration are comprehensive and provide for adjudication of "any complaints or grievances," either under Section 4 by the Commission or under Section 9 by an industrial engineer, depending upon the nature of the grievance.

■■■ The fact that Section 4 of Article IX provides a procedure for the arbitration of complaints and grievances other than those provided for in Section 9 does not in anywise militate against the right of the plaintiffs to obtain the settlement of the grievances by arbitration and, depending upon the nature of the grievances, under the procedure provided in Sections 4 and 9. It follows that if the Commission created by Section 2 determines that a grievance is submissible to it as the general arbitration commission, then it will proceed to determine the question, but if the Commission determines that the grievances involve new or changed operations, the correctness of time studies shall be subject to arbitration under Section 9, and a report in accordance with its findings would be submitted. Any grievances based on new or changed conditions and the correctness of time studies shall then be arbitrated by and in the manner provided in Section 9.

Notwithstanding the provisions of Article IX, the defendant contends that there is a factual issue presented to the court in that the court should determine the character of the grievances. The question is stated on the brief as follows: "Is the character of the grievance such that it should be submitted to the Commission for determination, or is it of such a nature that it should be presented to arbitration before an industrial engineer?"

The defendant states that "it is not asking this court to look, and admittedly the court cannot, into the merits of the grievance. However, the defendant thinks it is well settled that in a dispute such as this where the contract contains no answer to the dispute, it is solely within the range of the court's powers to determine the issue of what the character of this grievance is so that the parties will know what arbitration procedure to proceed under—the commission type or the industrial engineer type."

The defendant relies upon the case of Atkinson v. Sinclair Refining Company (1962), 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462, as an authority in support of this contention. The defendant seizes upon the quotation of the court from the Warrior and Gulf Navigation Company case, supra, appearing at page 241 of 370 U.S., at page 1320 of 82 S.Ct., but the court does not agree with the contention of the defendant because the quotation relied upon by defendant is merely that "a party cannot be required to submit to arbitration in any dispute which he has not agreed so to submit."

In the contract before the court the parties have agreed to submit "any complaints or grievances," and as heretofore stated, the fact that certain types of grievances are to be submitted to the Commission and another type is required to be submitted to an industrial engineer as arbitrator does not in anywise weaken the force of the total agreement to arbitrate.

In Taft Broadcasting Co. v. Radio Broadcast Tech. Local Union No. 253 (1962), 5 Cir., 298 F.2d 707, the court at page 708 said:

"Of course the question whether the parties promised to arbitrate a particular question is one for a Court. The trilogy of opinions did not undertake to alter that principle. But those decisions are of extreme importance as we have since many times acknowledged. Lodge No. 12, District No. 37, International Ass'n of Machinists v. Cameron Iron Works, Inc., 5 Cir., 1961, 292 F.2d

112; International Ass'n of Machinists v. Hayes Corp., 5 Cir., 1961, 296 F.2d 238 [Nos. 18946 & 18947, Dec. 8, 1961, 296 F.2d 238]; Mississippi Valley Electric Co. v. Local 130, International Brotherhood of Electrical Workers, 5 Cir., 1960, 278 F.2d 764, modified, 285 F.2d 229, as a result of the Supreme Court decisions. Two principles are emphasized. First, the purpose to exclude a particular type of dispute from the arbitration promise must be clearly spelled out. And second, courts must overcome the temptation of passing on the intrinsic merits of the controversy under the guise of determining whether the dispute is within the promise to arbitrate."

It is apparent that the grievances asserted by plaintiffs are claims, the determination of which is covered by the contract and in the manner provided therein.

▆▆ The plaintiffs, in addition to other relief as prayed for in the complaint, have asked the court to allow an attorneys' fee. Whether an attorneys' fee should be allowed turns on the historical equity powers of federal courts, since no statute authorizes attorneys' fees in the instant case. Such allowances are appropriate only in exceptional cases and for dominating reasons of justice. The answer to whether an allowance should be made depends upon the particular facts of the case presented in the light of the policy of the Act as declared by the many decisions of the Supreme Court of the United States. In the instant case the court does not believe that the resistance of the defendant to an order requiring arbitration was vexatious, wanton, or oppressive. On the other hand, the court is of the opinion that the defense was asserted in good faith, and therefore the demand of plaintiffs for the allowance of an attorneys' fee is without merit and should be denied. Local No. 19, International Union, etc., v. American Brake Shoe Co. (4 Cir. 1962), 298 F.2d 212.

There is no genuine issue as to any material fact, and the plaintiffs are entitled to a judgment as a matter of law as prayed for in their complaint, except for attorneys' fees.

Therefore, an order is being entered today sustaining the motion of plaintiffs for summary judgment and directing the defendant to carry out its agreement to arbitrate the grievances alleged in the complaint, and adjudging costs against the defendant.