**COMMUNICATIONS WORKERS OF AMERICA, AFL–CIO, and its Local Union No. 6572, Plaintiffs,**

v.

**ARKANSAS WESTERN GAS COMPANY, Defendant.**

**No. F–71–C–21.**

United States District Court,
W. D. Arkansas,
Fayetteville Division.

Aug. 10, 1971.

---

John P. Sizemore, of Youngdahl, Sizemore, Brewer, Forster & Uhlig, Little Rock, Ark., for plaintiffs.

James Gilker, and Hugo Swan, Jr., Fort Smith, Ark., for defendant.

## OPINION

JOHN E. MILLER, Senior District Judge.

This is an action by plaintiffs, Communications Workers of America, AFL–CIO, and its Local Union No. 6572, hereinafter referred to as the Union, to enforce an Arbitrator's award in a dispute with defendant, Arkansas Western Gas Company, hereinafter referred to as Arkansas Western.

A brief review of the events leading up to this action is necessary. On June 17, 1969, a collective bargaining agreement was executed between the parties containing basic provisions as to rates of pay, hours of work, conditions of employment, and other matters. The pertinent sections which concern this litigation are:

"ARTICLE II—MANAGEMENT RIGHTS

"Section 1: Subject to the limitations of this agreement, the Management hereby retains the sole control over all matters concerning the operation, management, and administration of its business, * * * instruction and control of employees, including but not limited to the determination of the qualifications of employees to perform work, the assignment of work or overtime, the right to select, hire, lay off, reclassify, upgrade, downgrade, transfer, discipline, suspend, separate for just cause or retire * * *."

"ARTICLE V—ARBITRATION

"Section 1: [The first part of this section sets out the pre-arbitration procedure; however, neither party is questioning the authority to enter into the arbitration process.] * * * The arbitrator shall submit the decision in writing within thirty (30) days after the conclusion of the hearing or hearings as the case may be and the decision of the arbitrator as so rendered shall be final and binding on the employees involved and the parties to this Agreement. * * *

"Section 2: The arbitrator shall be empowered, except as his powers are limited below, to make a decision in cases of alleged violation of rights expressly accorded by this Agreement or written local agreements supplementary thereto.

"The limitation on the powers of the arbitrator are as follows:

(a) *He shall have no power to add to or subtract from or modify any of the terms of any agreement.*

(b) He shall have no power to establish wage rates or scales or to change any existing wage scale or wage structure.

(c) The Company shall not be required to pay back wages prior to the date of a written grievance is filed with the Company.

(d) All awards of back wages shall be limited to the amount of wages the employee would have otherwise earned from his employment with the Company during the period as above defined less any employment or unemployment compensation or other compensation for personal services that he may have received from any source during the period."

(Emphasis added.)

"ARTICLE VII—SENIORITY

\*    \*    \*    \*    \*    \*

"*Section 2*: The parties to this agreement recognize the necessity for efficient operation of the business and the desirability of affording both job security and advancement opportunity to senior employees. Therefore, the parties agree as follows:

"A temporary vacancy or temporary position may be filled by the Company with an employee who, in its judgment, is qualified and has the ability to perform the work regardless of seniority. However, in cases of layoff, force reduction, permanent transfer, re-employment or promotional opportunity to permanent jobs, the Company shall give preference to senior employees taking into consideration the abilities of the employees and the conditions of the business."

"ARTICLE XXIV—WAGES      RATE RANGES

| "Job Classification | | Minimum | Maximum |
|---|---|---|---|
| Agent  Serviceman | | 2.50 | 2.75 |
| Serviceman A/C | A | 2.45 | 2.70 |
| Serviceman A/C | B | 2.25 | 2.50 |
| Serviceman | A | 2.35 | 2.60 |
| Serviceman | B | 2.05 | 2.35" |

When the matter was before the Arbitrator, the Union asserted that certain employees, Mr. Dean Hughes and Mr. Gary Franklin, were classified as "Serviceman A/C B," and upon the resignation of certain servicemen who were classified as "Serviceman A/C A," Hughes and Franklin filled the position of "Serviceman A/C A" for a substantial period of time before being given a chance to bid for a "Serviceman A/C A" position. The Arbitrator found that in accordance with the collective bargaining agreement defendant had failed to open promotion opportunities for Hughes and Franklin, and that they should be paid the difference between the pay for a "Serviceman A/C A" and "A/C B" during the time they did the work of a "Serviceman A/C A" prior to being promoted to that grade. Defendant asserted at the time of the arbitration and

continues to contend, that the collective bargaining agreement in the "Management Rights" clause gives it the power to determine when there are job vacancies, and that it has the right to use job classifications as a means of promotion of qualified employees.

The claims of Hughes and Franklin were properly raised through the grievance procedure.

On May 24, 1971, the Union filed its complaint in this action. It alleged that this action arises under Section 301 of the amended National Labor Relations Act, 29 U.S.C. § 185; that the plaintiffs are labor organizations representing employees in industry affecting commerce within the meaning of the amended National Labor Relations Act, 29 U.S.C. 141–187; that the defendant is an employer in an industry affecting commerce within the meaning of the above cited Act, and that a collective bargaining agreement was entered into between the plaintiffs and the defendant on or about June 17, 1969, and remains in effect until April 5, 1972. That this agreement is a contract within the meaning of Section 301 of the amended National Labor Relations Act, 29 U.S.C. § 185. The Union further alleged that on April 14, 1971, an arbitration award was rendered by Arbitrator Jerre S. Williams pursuant to the provisions of the collective bargaining agreement; that the defendant has refused to comply with the arbitration award; and that by doing so, the defendant has violated its contractual obligation to comply with the arbitration award. The Union requests an order requiring specific performance of the defendant's promise to comply with the arbitration award, to pay interest on any monies paid in compliance with the award and to pay the cost of this action, including costs and reasonable attorney's fees.

Defendant in its answer of June 14, 1971, admits that this action is within the provisions of the National Labor Relations Act and that an arbitration award was made by Arbitrator Williams. It denies that the arbitration award

was pursuant to the collective bargaining agreement and admits refusing to comply with the same. Affirmatively it alleged that the Arbitrator refused to apply certain provisions of the collective bargaining agreement, (1) Article II, Sections 1 and 2; (2) Article VII, Sections 1 through 7 and Exhibit A to Article VII; (3) Article XXIV; and (4) Article XXVIII, Sections 1 and 2; and the result of this refusal or failure to apply the sections of the collective bargaining agreement rendered the Arbitrator's award null, void and unenforceable. The defendant requests that plaintiffs be denied the relief they asked, that the complaint be dismissed, and that the defendant be awarded costs of this action and reasonable attorney's fees.

Both parties have submitted motions for summary judgment and responses thereto. The material facts are uncontroverted. The court has jurisdiction of the parties and the subject matter pursuant to 29 U.S.C. § 185. The Union and defendant agree that the plaintiffs are labor organizations representing employees in industry affecting commerce, that the defendant is an employer in an industry affecting commerce, that the plaintiffs and defendant entered into a collective bargaining agreement which is a contract, all within the provisions of the National Labor Relations Act, and that an arbitration award was rendered on April 14, 1971, by Arbitrator Williams. Arkansas Western also admits that it has refused to comply with the arbitration ward, and the only question before the court is whether or not the Arbitrator had the authority within the collective bargaining agreement to grant an award to the Union.

In National Brotherhood of Packinghouse & Dairy Workers v. Western Iowa Pork Company (S.D.Iowa 1965), 247 F. Supp. 663, the court, quoting from United Steelworkers of America v. American Mfg. Co., said:

"In United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 566, 80 S.Ct. 1343, 1345, 4 L.Ed.2d 1403, the court said:

" 'Section 203(d) of the Labor Management Relations Act, 1947, 61 Stat. 154, 29 U.S.C. § 173(d), states, "Final adjustment by a method agreed upon by the parties is hereby declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement. * * *" That policy can be effectuated only if the means chosen by the parties for settlement of their differences under a collective bargaining agreement is given full play.'

" 'The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator.'

" 'The courts, therefore, have no business weighing the merits of the grievance, or determining whether there is particular language in the written instrument which will support the claim.'

"In United Steelworkers of America, AFL–CIO v. Warrior & Gulf Nav. Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409, the court states:

" 'The collective bargaining agreement states the rights and duties of the parties. It is more than a contract; it is a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate.'

" 'The collective agreement covers the whole employment relationship. It calls into being a new common law— the common law of a particular industry or of a particular plant.'

" 'There are too many people, too many problems, too many unforeseeable contingencies to make the words of the contract the exclusive source of rights and duties. One cannot reduce all the rules governing a community like an industrial plant to fifteen or even fifty pages.' "

In United Steelworkers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574,

80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), the court stated the basis for the limitation of review of an arbitration award at page 581, 80 S.Ct. at page 1352, as follows:

"The labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law—the practices of the industry and the shop—is equally a part of the collective bargaining agreement although not expressed in it. The labor arbitrator is usually chosen because of the parties' confidence in his knowledge of the common law of the shop and their trust in his personal judgment to bring to bear considerations which are not expressed in the contract as criteria for judgment. The parties expect that his judgment of a particular grievance will reflect not only what the contract says but, insofar as the collective bargaining agreement permits, such factors as the effect upon productivity of a particular result, its consequence to the morale of the shop, his judgment whether tensions will be heightened or diminished. For the parties' objective in using the arbitration process is primarily to further their common goal of uninterrupted production under the agreement, to make the agreement serve their specialized needs. The ablest judge cannot be expected to bring the same experience and competence to bear upon the determination of a grievance, because he cannot be similarly informed."

In United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), the Supreme Court summarized this limitation on the District Court's scope of review at page 596, 80 S.Ct. at page 1360, as follows:

"The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards."

■■ The court will not disturb the award of the Arbitrator unless it appears that the Arbitrator's decision was outside of the authority granted by the collective bargaining agreement of the parties. The defendant in its brief in support of its motion for summary judgment and in opposition to plaintiffs' motion argues that the Arbitrator in this case made an award which is contrary to the express terms of the collective bargaining agreement. The defendant cites the Enterprise case, supra, for support of this contention. Though this is a correct interpretation of the Enterprise case, the defendant has failed to show in what way the award of the Arbitrator is outside of a reasonable interpretation and application of the terms of the collective bargaining agreement. Defendant further contends that the Arbitrator failed to apply the clear and unambiguous terms of the agreement. As previously mentioned, no collective bargaining agreement can cover every situation which may arise between the Union and the company. It is necessary to provide for arbitration and other methods in order to settle these differences. In the provisions of the collective bargaining agreement now before the court there is no specific provision which, by its express provisions, covers the situation that was before the Arbitrator. In view of the Arbitrator's knowledge of the situation and his extensive review of the agreement and finding no specific provision to cover the dispute before him, it was his duty to interpret the agreement and develop a reasonable solution to the dispute. See, Western Iowa Pork Co. v. National Brotherhood of Packinghouse & Dairy Workers, 8 Cir., 366 F.2d 275. Defendant cites Truck Drivers and Helpers Union, Local 784, v. Ulry-Talbert Co. (8 Cir. 1964), 330 F.2d 562, as being controlling. However, in Ulry-Talbert the bargaining agreement between the parties clearly covered the situation which was disputed, and there was no

interpretation of the intent and terms of the agreement necessary.

The defendant also argues that contra to the explicit terms of the bargaining agreement, the Arbitrator was adding to, subtracting from, or modifying the terms of the agreement. Article V, Section 2, subsection (a), provides that the Arbitrator does not have the power to add, subtract, or modify any terms of the agreement, and if the defendant could show that the Arbitrator had done so, then this court would not enforce the Arbitrator's award. The "Management Rights" clause of the agreement gives the company the sole control to promote employees and nowhere in the agreement did the company assume an obligation to automatically post any job which became vacant, but the Arbitrator's decision does not compel defendant to promote employees or to post jobs immediately upon said jobs becoming vacant. The Arbitrator's decision does require the company to honor the job classification scale set up in the bargaining agreement. Therefore, the Arbitrator has not amended, subtracted, or added any terms of the agreement.

The defendant admits that it is rare that an Arbitrator's award not be complied with, but the defendant feels that this is an exceptional case.

The plaintiff states that courts generally favor arbitration. United Steelworkers of America v. American Mfg. Co., supra; United Steelworkers of America v. Warrior & Gulf Nav. Co., supra; United Steelworkers of America v. Enterprise Wheel & Car Corp., supra. The Eighth Circuit has been responsive to this line of cases: Local 198, United Rubber etc. Workers v. Interco, Inc. (8 Cir. 1969), 415 F.2d 1208; Avon Products, Inc. v. International Union, UAW (8 Cir. 1967), 386 F.2d 651; Western Iowa Pork Co. v. National Brotherhood of Packinghouse & Dairy Workers, supra; United Brick and Clay Workers v. A. P. Green Fire Brick Co. (8 Cir. 1965), 343 F.2d 590; Builders Asso. of Kansas City v. Greater Kansas City Laborers Union (8 Cir. 1964), 326 F.2d 867; Selb Mfg. Co. v. International Ass'n of Machinists (8 Cir. 1962), 305 F.2d 177; Bonnot v. Congress of Independent Unions (8 Cir. 1965), 331 F.2d 355.

Plaintiff in its response to the motion of the defendant for summary judgment argues that the Arbitrator was clearly within his authority in making the award because of certain facts before him and the terms of the collective bargaining agreement.

In his decision the Arbitrator stated:

"8. The company is obligated in good faith under this contract when there is enough work of the general type to justify a position in a higher job classification to create or maintain that job classification. This obligation comes from the Table of Classifications and Wage Rates. If this obligation were not present, the wage rates mutually agreed upon by the parties would be subject to complete management control. The contract does not contemplate this.

"9. The union must recognize that the obligation upon the company stated in the preceding item does not require the company to create new positions when some aspect of a job involves work which would require the higher classification. Thus, single employees in small installations need not be classified as Serviceman A/C A because they occasionally may have to do some Serviceman A/C A work. This contract clearly contemplates flexibility with respect to these matters. The obligation stated in the preceding item is only to require the existence of a position in the higher job classification when there is justification in the total work for such a position, as there clearly was in July and August in Fayetteville, since those positions already existed.

"10. The arbitrator has been very careful not to add to the terms of this contract. The contentions of the

union concerning a firm obligation to maintain all positions, and to put all positions up for bid as soon as they are vacated, to pay in accordance with higher job classification whenever any work properly attributable to that classification is done, are all matters which are not in this contract. For the arbitrator to have recognized them as binding would have been adding to the terms of this contract. They are matters which the union must obtain, if they are to be obtained at all, through the process of collective bargaining."

It is clear to the court that the Arbitrator's decision was obviously within the terms and the intent of the collective bargaining agreement. Therefore, the court should compel the defendant to comply with the arbitration award. National Brotherhood of Packinghouse & Dairy Workers v. Western Iowa Pork Co., supra.

In its complaint the Union prayed for attorney's fees in this matter. This court has previously considered a similar question in the case of United Furniture Workers of America, AFL–CIO, Local 270, v. Ft. Smith Couch & Bedding Co. (W.D.Ark.1963), 214 F.Supp. 164, in which it stated at page 173:

"The plaintiffs, in addition to other relief as prayed for in the complaint, have asked the court to allow an attorneys' fee. Whether an attorneys' fee should be allowed turns on the historical equity powers of federal courts, since no statute authorizes attorneys' fees in the instant case. Such allowances are appropriate only in exceptional cases and for dominating reasons of justice. The answer to whether an allowance should be made depends upon the particular facts of the case presented in the light of the policy of the Act as declared by the many decisions of the Supreme Court of the United States. In the instant case the court does not believe that the resistance of the defendant to an order requiring arbitration was vexatious, wanton, or oppressive. On the other hand, the court is of the opinion that the defense was asserted in good faith, and therefore the demand of plaintiffs for the allowance of an attorneys' fee is without merit and should be denied. Local No. 149, International Union, etc. v. American Brake Shoe Co. (4 Cir. 1962) 298 F.2d 212."

▮ There is no substantial disagreement in the conclusions reached by other courts in the consideration of whether a claim for attorney's fees should be allowed. The instant case is not an exceptional case within the context required by the American Brake Shoe case, supra, and the court is of the opinion that the defendant was acting in good faith in refusing to comply with the Arbitrator's award prior to review of the award. In this instance no attorney's fee will be allowed.

The Union also asked for interest on any monies due to Franklin and Hughes under the terms of the collective bargaining agreement in its complaint. In view of the above finding of the court that the defendant was in good faith resisting the award of the Arbitrator, no claim for interest will be allowed.

Therefore, an order is being entered today denying the motion for summary judgment of the defendant, sustaining the motion for summary judgment of the plaintiff, and directing the defendant to comply with the Arbitrator's award and adjudging costs against the defendant.