UNITED STEELWORKERS OF AMERI-
CA AFL–CIO, an unincorporated
association, Plaintiff,

v.

UNITED STATES GYPSUM COMPANY,
a corporation, Defendant.

Civ. A. No. 71–248–S.

United States District Court,
N. D. Alabama, S. D.

Feb. 21, 1972.

Jerome Cooper, Cooper, Mitch & Crawford, Birmingham, Ala., for plaintiff.

Harold D. Burgess, Price, Cushman, Keck & Mahin, Chicago, Ill., John J. Coleman, Jr., Bradley, Arant, Rose & White, Birmingham, Ala., for defendant.

## MEMORANDUM OF OPINION

POINTER, District Judge.

Plaintiff union brings this action under 29 U.S.C. § 185 and 28 U.S.C. § 2201 to enforce the award of an arbitrator selected by the parties following a court order to arbitrate. See 384 F.2d 38 (5th Cir. 1967), cert. denied, 389 U.S. 1042, 88 S.Ct. 783, 19 L.Ed.2d 832 (1968).

On April 1, 1965, defendant company acquired from United Cement Company, Inc., a lime plant at Montevallo, Alabama, under circumstances that, in the opinion of this court and the Court of Appeals, bound defendant to arbitrate claims arising under a three-year collective bargaining contract executed twelve months previously by the union and United Cement. This contract included

provisions not only for arbitration but also for check-off of union dues and for re-opening negotiations for the third year regarding a wage increase and paid holidays.

The grievance ordered to be arbitrated was that presented to defendant by the union on May 17, 1965, which in pertinent part read as follows:

"1. The Company refuses to recognize and comply with the contract executed on March 30, 1964.

\*   \*   \*   \*   \*   \*

"3. The Company has failed and refused to deduct union dues in accordance with Article VI of the contract.

\*   \*   \*   \*   \*   \*

"5. The Company has announced that it is not bound by said contract.

"6. The Company has refused to recognize or deal with the duly authorized officers and representatives of the Union."

In affirming the order compelling arbitration of these issues—hardly of the classic variety—the Court of Appeals warned of the possibility of non-enforcement of the ultimate award, concluding that "whether the decision or the remedy prescribed is, or is not, supportable is for another day." 384 F.2d at 49. This caveat has particular significance since at the time of the appellate order the union had been decertified as bargaining representative and the collective bargaining agreement had expired.

On May 21, 1968, evidence was presented to the arbitrator and the grievance taken under submission by him. On February 28, 1971, in a lengthy opinion (116 pages), the arbitrator rendered his award. The parts of the opinion pertinent to this litigation [1] may be summarized as follows:

(1) The collective bargaining agreement was held to be binding on the defendant, and the union was held entitled to recognition as bargaining representative for the period from defendant's takeover (April 1, 1965) to its decertification (December 2, 1966). Defendant was held to have violated the agreement by refusing to negotiate with the union during this period under the reopener provision for wage increases and holiday benefits, a dispute held by the arbitrator as properly before him as being inherent in issues 1, 5 and 6. To require negotiation at the time of the award (long after decertification) was considered impractical. He concluded that an appropriate remedy was to hold the defendant to what (in his opinion) it would likely have agreed upon had negotiations been carried on—a figure which he determined to be $.10 per hour. He ordered defendant to pay an amount calculated on a $.10 per hour increment for work period from April 1, 1966 (the reopener date) to October 10, 1966 (the date on which defendant "unilaterally" granted a $.06 per hour increase), and calculated on a $.04 per hour increment for work periods from October 10, 1966, to the date of payment. No "corrective" action was ordered regarding the defendant's "unilateral" conversion in December 1966 of the six holidays to a paid holiday status.

(2) Check-off authorizations for union dues previously given to United Cement were, under all circumstances, held binding on the defendant. Defendant's objections—that it never received the cards from Union Cement; that the cards, naming Union Cement as employer and purporting to be irrevocable for 13 months, were invalid under 29 U.S.C.A. § 186(c) (4); and that check-offs were invalid under Alabama law—were rejected by the arbitrator as "afterthoughts", his conclu-

---

1. The arbitrator ruled in the company's favor on issue 2 (filling of some job vacancies contrary to the contract) and on issue 4 (refusal to follow seniority provi-

sions). He also concluded that objections to certain discharges were beyond the scope of the issues presented to him under the grievance.

sion being that the real reason for the defendant's action lay in its disavowal of the union's status and of any viability in the collective bargaining agreement. He ordered payment to the union of an amount equal to that which should have been checked off from April 1, 1965, to December 2, 1966. He further ordered that this expense be borne by the company without recovery from the wages of the employees, his rationale being that company action had prevented the union from rendering the full services for which dues would have been paid and that inequitable treatment could arise due to difficulties concerning persons no longer on the payroll.

(3) He determined that 6% interest, compounded quarterly, should be paid by defendant on the check-off award from April 1, 1966, to date of payment, and that interest similarly computed should be paid by defendant on the wage increment to the date of payment.

(4) He provided that the wage increment award, with interest, be paid by the company to the union and then distributed by it to the employees, so that the union "should now be given a chance to tell its story for the purpose, if such be its purpose, of once again organizing the plant."

(5) He declined, though, "sorely tempted," to award the union its attorney's fees and other costs, concluding that such would be beyond his authority under the contract.

Upon defendant's refusal to comply with the arbitrator's award, this suit was instituted by the union for its enforcement and for attorneys' fees and costs. The cause was submitted to the court on October 18, 1971, and briefs followed.

## I. WILEY—H. K. PORTER PRINCIPLES

In appropriate circumstances a "successor" employer may be bound to arbitrate disputes arising under a collective bargaining agreement to which it was not a party and which it did not assume. John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964). Yet, acting under the same act of Congress that authorizes courts to compel such arbitration, the NLRB "is without power to compel a company or a union to agree to any substantive contractual provision of a collective-bargaining agreement." H. K. Porter Co. v. NLRB, 397 U.S. 99, 102, 90 S.Ct. 821, 823, 25 L.Ed.2d 146 (1970).

Underlying the present litigation is a conflict between the parties as to the extent to which a successor bound under *Wiley* to arbitrate can be bound, consistent with the teaching of *H. K. Porter*, to the other terms of that contract which it did not make. Two circuits have recently held that the successor cannot be forced to accept the provisions of its predecessor's agreement.[2] A different conclusion is here reached—the court concluding that principles implicit in *Wiley* and in the Fifth Circuit's opinion[3] in the action brought to compel the arbitration here in question require a conclusion that the defendant became bound by the terms of the outstanding agreement, and not merely those provisions relating to arbitration.

The disputes ordered to arbitration in *Wiley* were not merely—if indeed any were—ones that had arisen under the agreement prior to the change of employers. Referring to those that arose after the change (but within the period of the agreement), Mr. Justice Harlan for a unanimous court stated: "Claimed

2. Burns Intern'l Detective Agency, Inc. v. NLRB, 441 F.2d 911 (2nd Cir. 1971), cert. granted, 404 U.S. 999, 92 S.Ct. 559, 30 L.Ed.2d 551 (1971); NLRB v. Interstate 65 Corp., 453 F.2d 269, 67 L.C. ¶ 12,319 (6th Cir. 1971).

3. This opinion is looked to, not under the "law of the case" doctrine, but for guidance on the meaning of *Wiley*.

rights during the term of the agreement, at least, are unquestionably within the arbitration clause." 376 U. S. at 554, 84 S.Ct. at 917. In the present case all of the disputes were based on actions of the defendant, and hence after its acquisition. In affirming the holding that "the predecessor contract bound the Successor to arbitrate claims under it", the Circuit Court clearly concluded that the defendant was bound by the terms of Union Cement's agreement and that only an overturning of *Wiley* could produce a different result. It is difficult to perceive how a successor employer could be required to arbitrate claims arising on account of conduct after its takeover in alleged violation of the agreement without, of necessity, holding that it was bound by the terms of such agreement.

This court is under a duty to reconcile *H. K. Porter* with *Wiley* if reasonably possible to do so. There is no difficulty in so doing. *Wiley* did not purport to authorize outside agencies such as arbitrators, NLRB, or courts to write a new contract governing relations in an industrial community. Rather it held that a new entrant to that community can, for policy reasons, be bound to an existing contract for that community notwithstanding its lack of consent thereto. In *H. K. Porter* however the question was writing a new contract, rather than determining who was bound by an existing one.[4] In short, *H. K. Porter* need not be taken as a repudiation of *Wiley*.

## II.  WAGE RE–OPENER

█  With this preface it is now appropriate to turn to the arbitrator's decision regarding issues 1, 5 and 6, under which he awarded a wage increase under the reopener provision of the agreement.

Under the principles just stated, the defendant was bound—as in like manner United Cement had been bound—to the following provision of the March 30, 1964, agreement:

> "In connection with the third year of the contract, it has been agreed that the contract may be re-opened only for the negotiation of a wage increase and paid holidays as a fringe issue. Any notices to re-open contract for either or both of these two issues during the third year are to be given in the same manner as required by law to negotiate a new contract."

Although the union on January 18, 1966, gave notice to the defendant of its election to reopen the agreement under this provision, the defendant (true to its position of refusing to recognize the union as a bargaining representative) declined to enter into such negotiations. Instead, it "unilaterally" in the Fall and Winter of 1966 put into effect certain wage increases and paid holidays.

The arbitrator quite properly concluded that, in a decision coming more than four years after the union's decertification, it would hardly be appropriate to order the defendant and the union to negotiate at that time over a 1966 wage increase. But—this court is convinced—the recourse selected by him (of, in effect, determining what the parties would have agreed to had negotiations been conducted) is even less sustainable and indeed must be set aside as beyond his jurisdiction.

A re-opener such as contained in this agreement is ultimately but a right to free oneself for a particular purpose from the constraints of the contract—to permit negotiation for a new contract on a particular subject without the limita-

---

4. There is, of course, the additional distinction that *H. K. Porter* (as well as *Burns* and *Interstate 65 Corp.*) dealt with the power of the NLRB, whereas *Wiley* was concerned with the scope of arbitration. In and of itself this difference would not appear to be critical, for both are tied into the National Labor Relations Act and the same overall poli-

cies. But the functional differences between the two support the distinction being drawn here by the court: in matters relating to negotiation of new contracts the NLRB is typically the concerned agency, while in matters relating to disputes under existing contracts primary emphasis is typically on the arbitration process.

tions of no-strike and arbitration clauses.[5] It would certainly be possible for the parties to agree to submit unresolved disputes over the terms of a new contract (whether at the expiration of the original term or under a re-opener provision) to arbitration, calling for the arbitrator to make the new contract for them. But no such provision is contained in this agreement. Austin Mailers Union No. 136 v. Newspapers, Inc., 329 F.2d 312 (5th Cir. 1964). Instead, the union and United Cement agreed to the following:

> "The Arbitrator shall only have jurisdiction and authority to interpret, apply or determine compliance with the provisions of this Agreement. The Arbitrator shall not have jurisdiction or authority to add to, detract from, or alter in any way the provisions of this contract. The decision of the Arbitrator shall be final and binding on both parties."

This clause, of standard form, imposes on defendant no greater responsibilities than it did on the signatory employer, United Cement.

The following portions of the *Wiley* opinion are pertinent:

> "This Union does not assert that it has any bargaining rights independent of the Interscience agreement; it seeks to arbitrate claims based on that agreement, now expired, *not to negotiate a new agreement*." (376 U.S. 551, 84 S.Ct. 915) (italics added)

> "Of course, the Union may not use arbitration to acquire new rights against *Wiley* any more than it could have used arbitration to negotiate a new contract with Interscience, had the existing contract expired and renewal negotiations broken down." (376 U.S. 555, 84 S.Ct. 917).

Arbitration here has had the result of the arbitrator's making a new contract (albeit for the limited purpose of the wage scale to be paid). This portion of the award violates the principle enunciated in *H. K. Porter*, which, as previously indicated, is to be read with, and not as overruling, *Wiley*.

In voiding this portion of the award, the court is mindful of the severe limitation placed on judicial review of arbitration. This is one of those "highly unusual" cases, particularly since the error is most clearly seen in the remedy—an area in which the arbitrator is generally to be given greatest flexibility. United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S. Ct. 1358, 4 L.Ed.2d 1424 (1960). Nor is this holding contradictory of the earlier order requiring the grievance to be submitted to arbitration: in the first place, the Circuit Court at several points in its opinion cautioned that there could be serious questions of enforceability if an award were made; and, secondly, the Court did not address itself to the reopener question at all, which was a dispute which arose after the grievance was prepared and even after the complaint had been filed in the district court to compel arbitration.[6]

## III. THE "CHECK–OFF" AWARD

The next question relates to the "check-off" award. That the defendant was bound by the check-off provisions in United Cement's agreement is clear from what has been previously said. Nor would exception (c) (4) to the proscription of 29 U.S.C. § 186(a) have ceased to be applicable had the defendant been correct in its insistence that the union was not the bargaining representative of its employees—no such requirement is contained in the wording of that exception. *Cf.* Modine Mfg. Co.

---

5. The failure to bargain will typically provide a basis for a charge before the NLRB. In fact in the present case such a charge was filed by the union though for reasons of strategy it later withdrew the charge.

6. In view of its decision on other grounds, the court pretermits discussion of defendant's objection that the reopener question was not even properly before the Arbitrator under the particular grievance.

v. Grand Lodge Intern'l Ass'n of Machinists, 216 F.2d 326 (6th Cir. 1954). Defendant's attempted use of conflicting state laws (Ala. Code, Title 26, § 375(5) and Title 39 § 201) is also unavailing, the "check-off" area having been preempted by the federal legislation. SeaPak v. Industrial Employees, 300 F. Supp. 1197 (S.D.Ga.1969), aff'd 423 F. 2d 1229 (5th Cir. 1970), aff'd 400 U.S. 985, 91 S.Ct. 452, 27 L.Ed.2d 434 (1971).

■■ Defendant's several objections directed to the authorization forms—(1) that it did not receive the forms from United Cement (or was not aware of their presence until too late), (2) that contrary to 29 U.S.C. § 186(c)(4) it (as distinguished from United Cement) was not named as employer, and (3) that the form could be interpreted as purporting to be irrevocable for 13 months rather than 12 months permitted under 29 U.S. C. § 186(c)(4)—were all presented to the arbitrator. These were certainly defenses that went to the merits of the grievance, and were properly before him for consideration. His ruling on them— essentially that the defendant was estopped to arise such defenses by not having made such objections at a time when they could have been corrected—is to be honored on judicial review,[7] at least unless the defendant would be required thereby to commit an illegal act. (See 384 F.2d at 49.) Objection (1) is clearly not of such a type. The reasoning for the *Wiley* decision negates objection (2). Objection (3) is premised upon a technical reading of the wording of the authorization forms and, there being no showing that anyone was ever denied the privilege of revoking an authorization for the thirteenth month, the form could be construed in a manner consistent with the legislative exception.

The court concludes that the arbitrator's decision regarding "check-off" is due to be enforced, and that the basic remedy selected—awarding to plaintiff an amount equal to the dues that should have been checked off during the period April 1, 1965, to December 2, 1966— "draws its essence" from the agreement and is due to be enforced. The defendant's general objections (partiality, etc., on the part of the arbitrator) are not supported by the evidence presented.

The arbitrator has, however, determined that the "check-off" award should be paid by the defendant without any reimbursement from the wages of its employees. Under such a ruling the defendant would be called upon to do an act clearly in violation of 29 U.S.C. § 186(a), that is, insofar as dues for persons still in its employ and hence subject to payroll deductions. The object is to compensate the plaintiff for its loss, not to penalize (any more than may be necessary to accomplish such compensation) the defendant. As to the uncollected dues of those no longer employed by the defendant, the burden of recompense must be borne by the defendant as in the nature of damages caused the union by its actions; as to the uncollected dues of those still employed, the union is due to be paid by them what the arbitrator found to be owing, the 20 months of dues, the same to be withheld out of their future wages. The award is due to be modified accordingly.

It is, of course, predictable that the employees subject to withholding at this time will feel discriminated against, particularly in comparison to those no longer employed. Yet it is also true that the union has spent many hours of effort over a four year period in this matter not merely for its own vindication but also for increased benefits for those em-

7. United Steelworkers v. Enterprise Wheel & Car Co., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960) ; Minute Maid Co. v. Citrus, Cannery, Food Processing and Allied Workers, Drivers, Warehousemen and Helpers, Local Union, 331 F.2d 280, 281 (5th Cir. 1964) ; Lodge No. 12, Dist. No. 37, Intern'l Ass'n of Machinists v. Cameron Iron Works, Inc., 292 F.2d 112 (5th Cir. 1961) ; Intern'l Bhd. of Pulp, Sulphate and Paper Mill Workers, AFL–CIO v. Allied Paper Inc., 447 F.2d 1344 (5th Cir. 1971).

ployees, and that, had the wage increment been sustained (as forcibly urged by the union), those employees would have been the most benefited. And it may be that, for reasons of policy, the union will choose to elect the option granted it later in this decision for attorneys' fees and costs.

## IV. OTHER MATTERS

 The defendant has challenged the award of compound interest on the monetary awards. The question is, of course, mooted insofar as the wage increment is concerned. While perhaps not customary, an award of interest would appear to be within the broad discretion of an arbitrator in fashioning appropriate relief. Nor does compounding of the rate appear to be beyond the scope of that same discretion. The direction, however, to compute interest on the whole award from April 1, 1965, when the first partial payment should have been made, does not have any rational basis. The award is modified to provide that the interest should be computed as of the close of the quarter in which the dues should have been paid, bringing the time of accrual into congruency with the arbitrator's requirement for compounding. While admitting some inconsistency with the treatment of who bears the ultimate expense of the unpaid dues, the court concludes that the arbitrator's decision requiring the company to bear the total interest charge, rather than passing it on to present employees, should be sustained.

The question over the arbitrator's requirement that the wage increment be paid through the union, rather than directly, is moot due to the court's decision voiding such increment award.

There is finally the question of the union's claim to attorneys' fees and costs. The arbitrator declined any such award at that point due to reservations over the scope of his authority. The court is persuaded that, under all the circumstances and in the exercise of its equitable powers, such an award would be justified if the union were not to receive the unpaid 20 months of dues.[8] The court further concludes that the union should have a right to withdraw its insistence, if it so chooses, for such dues and instead be awarded an amount to fairly compensate it for its attorneys' fees and costs over this almost six year struggle. The union is hereby directed to advise the court within ten days after entry of this order if it desires to waive its entitlement to the dues and interest thereon, in which case the court will retain jurisdiction of this cause for presentation of evidence respecting the amount of fees and costs to be awarded.

---

8. *Cf.* Tiidee Products, Inc., 1972 CCH NLRB ¶ 23,831.